(No. 2600.   Dec. 2, 1921.)

## RHODES ET AL. V. YATER ET AL.

### SYLLABUS BY THE COURT.

A trust for the purpose of "evangelization" and "preaching of the gospel" is not void for uncertainty as to object or beneficiaries.

Appeal from District Court, Chaves County; Bratton, Judge.

Proceeding by William H. Rhodes and others against C. N. Yater and others to contest the will of William Rhodes, deceased. Will held invalid in the probate court, but held valid in the district court on appeal, and admitted to probate. Contestants appeal. Affirmed.

Ed. S. Gibbany, of Roswell, for appellants.

C. O. Thompson and Tomlinson Fort, both of Roswell, for appellees.

### OPINION OF THE COURT.

DAVIS, J.   William Rhodes, of Chaves county, died in January, 1920, leaving a will which is the subject of this litigation. His heirs at law were

two sons and a daughter, to whom bequests were made, and a daughter of a deceased son, of whom no mention was made in the will. It is agreed by all the parties interested that as to this grandchild, under section 5870, Code 1915, William Rhodes died intestate, and that she is entitled to a one-fourth interest in the property which he left.

The will, after providing for payment of debts and other matters not necessary to be mentioned here, proceeded in item 4 as follows:

"I direct that all my property, both real and personal, and of whatsoever nature or kind, except as provided in item 7, be sold by my executors at either private or public sale as may seem to them best, and that the proceeds from the sale of said property after the above mentioned items have been paid, be divided and distributed as follows:

"That my children, Homer H. Rhodes, William H. Rhodes, and Rosa Andrews, divide the household goods among themselves as they may agree and that my library and manuscripts be given to Dr. C. N. Yater, C. R. Nichol and Charles McMain, Trustees hereinafter named, same to become part of the fund hereinafter mentioned for evangelistic purposes."

Items 5, 6, and 7 cover payment and matters not involved here. Item 8 is as follows:

"That the remainder of said property be divided as follows:

"That one-half of said property be given to my said children and divided and prorated as follows: To equalize advancements made to me by my son Homer H. Rhodes, that he be paid the sum of $500.00 and that the remainder then be equally divided among my said children, William H. Rhodes, Homer H. Rhodes, and Rosa Andrews and that the remaining one-half to be used for the purpose of evangelization, and the publication of manuscripts heretofore prepared by me and for the purpose of carrying out the provisions of this bequest, I hereby appoint Dr. C. N. Yater, of Roswell, Charles McMain, of Dexter, New Mexico, and C. R. Nichol, of Clifton, Texas, and direct that the one-half of the proceeds of the estate as above mentioned, be paid to them as trustees and that they direct the use of the money in the preaching of the gospel as may to them seem best."

The controversy here arises over the bequest to

the trustees of the library and manuscripts and the one-half of the residuary estate to constitute a fund to be used "for the purpose of evangelization and the publication of manuscripts," theretofore prepared by him, with the provision that the trustees "direct the use of the money in the preaching of the gospel as may to them seem best."

Objections to the probate of the will were filed in the probate court by the three children of William Rhodes. These objections, so far as of importance here, are carried into the assignments of error filed in this court. The probate court held the will invalid and declined to approve it. Under section 5879, Code 1915, a transcript of the proceedings was then filed in the district court of Chaves county where the validity of the trust created by the will was again tried. The judge of that court in a careful opinion held the trust provisions valid and admitted the will to probate, subject to the one-fourth interest of the grandchild. From that ruling this appeal is prosecuted.

All parties have acquiesced in the method by which the validity of this trust is presented, and no question of procedure is involved.

The statutes of this state allow every person of sound mind and over 21 years of age to dispose of his property by will. Just as during his lifetime he may do with it as he pleases, so upon his death he may distribute it according to his wish. The statutory law imposes no limitations upon this power. The primary duty of a court is to ascertain the desire of the testator, as he has expressed it, and to carry it to fulfillment unless public policy or general rules of law imposes a prohibition. William Rhodes expressed his wish that one-half of his residuary estate should become the property of his children. The other half, with a benevolent intention to benefit his fellow man, he left to be used for the pur-

pose which he thought most likely to conduce to that end, the preaching of the gospel. If this property under the trust was devoted to the relief of physical distress and suffering, the class of beneficiaries being designated, there would be no hesitation in carrying out his directions. Man has spiritual needs as well as physical ones, and a bequest for the purpose of ministering to those needs is charitable. The fact that the beneficiaries are not designated as individuals nor as a distinct class, but may be any to whom the beneficence of the testator may reach, does not change the character of the trust. In every public charity the exact individuals who may be benefited are unknown. The wish and intent of the testator are plain. The only question then arising is as to whether the general rules of law. prohibit the creation or execution of such a trust.

It is said that the trust is indefinite in purpose since the exact method in which it is to be administered is not stated. By its terms it is to be used "for the purpose of evangelization" and "in the preaching of the gospel." To evangelize is to preach the gospel; so there is no contradiction in these terms. The preaching of the gospel must be carried out through some human agency, and it is to be presumed that the fund is to be used in the assistance of those who are engaged in that work. True, the agents through which the result will be accomplished are not named; that being left to the trustees. In other words, the trustees select the individuals who will carry out the wish of the testator by the preaching of the gospel. But that does not make the purpose indefinite. It merely leaves to the trustees the selection of the agency through which that purpose is to be accomplished.

Again, it is said that, since no beneficiaries are designated, there is no one who could apply to a court for protection against a breach of duty by the

trustees. Without agreeing with the legal conclu-
sion stated it is sufficient to say that we will not
presume in advance that the trustees will violate
their trust or will refuse to perform their duties.
Human society is founded upon the virtue of its
members, not upon their wickedness, and this court
must presume integrity rather than dishonesty. The
testator has selected his trustees, and has, without
doubt, named men in whom he had full confidence
and to whose character he was willing to trust the
control of this fund. We cannot presume in ad-
vance that his confidence was misplaced.

In every trust there must be both a trustee and
beneficiaries, and, while a court of equity can sup-
ply the lack of a trustee, it cannot supply the lack
of a beneficiary. If this were a private trust, the
objection would be sound, for a gift to one for the
use of another not named is deficient on its face,
but as to charitable and religious uses and purposes
an exception to the general rule is recognized by
the courts of most of the states. As to them it is
generally held that the beneficiaries need not be
named nor even identified as belonging to any par-
ticular class or locality. This should be the true
rule, for the inherent idea of a public charity is that
its benefits shall reach an indefinite number of peo-
ple, and the broader the benevolence of the giver
the wider his beneficence extends, and the greater
in number and more impossible of identification be-
come the recipients of his bounty.

In Going v. Emery, 16 Pick. (Mass.) 107, 26 Am.
Dec. 645, a devise "to the cause of Christ, for the
benefit and promotion of true evangelical piety and
religion," was sustained as valid against the conten-
tion that the beneficiaries were uncertain. In Cham-
bers v. St. Louis, 29 Mo. 543, a well briefed and dis-
cussed case, it was held that a devise to the city of
St. Louis in trust to constitute a fund "to furnish re-

lief to all poor emigrants and travelers coming to St. Louis on their way, bona fide, to settle in the West" was valid, the court saying:

"As the general object of the charity was specific and certain, * * * with a competent trustee to execute the charity designated, we do not see on what ground this objection can rest. If under such circumstances, the uncertainty of the persons to be relieved by a charitable fund could be available to destroy it, few charities could be sustained. If all the recipients of a charity could be designated with certainty at the time of its creation, there would be no necessity for a law for charitable uses different from that which govern all other trusts. * * * From the very nature of the subject, charitable gifts must be objects vague and uncertain. The subjects of the charity may be numerous, and they are to be sought for and ascertained by those to whose discretion and judgment the dispensation of the relief is entrusted. The founder of a charity, by placing his fund in the hand of a competent trustee, designating the general object of the trust, with power to carry that object into effect, makes the trustee his substitute or delegate. * * * As the donor of the bounty is willing to confide its management to the discretion of his agent, so long as that agent acts in good faith his acts are the acts of his principal, and there is no one but the principal to complain. If the agent abuses his trust, he, like all other fiduciary agents, is subject to the control of the courts."

In 37 L. R. A. (N. S.) 993, a note attached to the case of Buchanan v. Kennard, 234 Mo. 117, 136 S. W. 415, Ann. Cas. 1912D, 50, sets forth numerous cases illustrating the sufficiency of designation of beneficiaries in charitable trusts. In the case itself a devise for the benefit of sick and injured persons, without distinction of creed was held sufficiently specific. In 14 L. R. A. (N. S.) 75, 92, will be found a note to the case of Hadley v. Forsee, 203 Mo. 418, 101 S. W. 59, treating fully of this principle and citing numerous cases.

In the case of Quinn v. Shields, 62 Iowa, 129, 17 N. W. 437, 49 Am. Rep. 141, the testator provided that certain funds should "go to the support and encouragement of such worthy and charitable and educational and religious institutions of the Roman

Catholic faith, as my said friend, Marty T. Shields, may determine." The court said:

"The will does not specifically name the persons or institutions that are to receive the charity. It leaves the beneficiaries to be chosen and named by the person appointed to distribute the charity. It is competent for a testator to bestow a charity upon a person or institution to be chosen or named by a trustee or executor. In that case there is no uncertainty of the beneficiary, for the courts, when called upon to enforce the testament, will be advised of the direction of the charity by the act or declaration of the trustee or executor. Wills providing for the distribution and appropriation of charities in this manner are always upheld by the courts."

In Re Stewart's Estate, 26 Wash. 32, 66 Pac. 148, 67 Pac. 723, property was left to certain trustees for the benefit of an academy, with the provision that, if the academy was not established, the trust should be used "for such other charitable purposes and uses as they may see fit in their discretion to employ the same." The academy was not established, so that the court was called upon to construe the language quoted. The court said:

"The provision that, in default of the establishment of the proposed academy, the trustees shall use the bequest for such other charitable purposes and uses as they may see fit in their discretion, was adjudged void in the decree before us. The testatrix appointed competent trustees, and they have entered upon the discharge of their trust. This is not a devise, to charitable uses generally, without the designation of a trustee, or, in other words, the imposition upon the court of the appointment or designation of the beneficiaries. The testatrix has reposed this confidence in her trustees, and it cannot be said that they may not execute the trust. And, if there is an abuse of the discretion reposed in them, they may be subject to the jurisdiction of equity. The decree will therefore be modified so as to sustain the validity of the devise as set forth in the will, and, as modified, affirmed, and the cause remanded for such modification and entry of final decree."

In the case of Estate of Mary C. Dulles, 218 Pa. 162, 67 Atl. 49, 12 L. R. A. (N. S.) 1177, the provisions construed authorized named trustees to distribute the fund among such religious, charitable and benevolent purposes and objects or institutions

as in the discretion of such executors shall be best and proper. The court said:

"If the testatrix had made the writing referred to, and named the objects, persons, or institutions she desired should take, there could be no question of the validity of the bequest whether the courts or any one else thought the objects were religious, charitable, or benevolent or not. In naming the legatees she would have defined the terms 'religious,' 'charitable,' and 'benevolent' for the purposes of her will, and it was within her right to do so. She did not make the written directions, however, and therefore the alternative provision of her will became operative. The discretion which was hers to exercise she chose to delegate to her executors. It was her right to do so, and so long as their discretion is not legally abused its exercise is as valid as if it was expressly her own.

"It is argued that the conclusion is altered by the facts that the will created a trust, and that the use of the word 'benevolent' made the trust too indefinite to be enforced. The injustice as well as the illogical character of such argument is apparent. However, doubtful what the testatrix did in fact want may seem, it is certain she did not want her estate to pass under the interstate law. To prevent that she appointed executors presumably familiar with her wishes, and invested them with ample discretion to distribute the estate 'having full confidence in (their) judgment, ability, integrity and discretion.' Every element of certainty is potentially here, and yet, for fear the executors thus informed and thus trusted might ignorantly or intentionally fail to do what she wanted done, the court is asked to step in and do the one thing it is absolutely certain she did not want—pass the estate under the intestate laws. It is manifest that the testatrix intended distributing among others than the executors, and that the gift to them was in a fiduciary capacity. There was therefore a trust. But that does not interfere with the discretion of the trustees, except to limit their powers to the purposes intended, and to enable the courts to prevent a plain diversion of the gift which would be a fraud on the trust."

The decisions upon this subject are not uniform, and there are authorities which cannot be reconciled with the decisions cited above. The question has not been determined in this state, and we are therefore unhampered by direct precedent. We believe the rule sanctioned by the cases cited is sound in principle and based upon the better reasoning.

We therefore find no difficulty in upholding the trust created by the will before us.

From the language used the trustees are author-ized and directed to use the fund to pay for the preaching of the gospel. The object is certain and the extent of power defined.

Appellants requested the trial court to make certain findings, the effect of which would have been to state the court's opinion as to its power to control the discretion of the trustees, the filling of vacancies, the extent of the trustees' interest, and other matters dealing with the construction and enforcement of the will. None of these requested findings was germane to the decision of the matters then pending, but all were abstract, dealing with questions that might or might not arise in the future. The court properly refused them.

For the reasons stated, the judgment of the trial court is affirmed; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.