260 P.2d 1111

**In re MILLS' WILL.**

**BAASCH et al. v. WEBB.**

**No. 5588.**

Supreme Court of New Mexico.

Sept. 11, 1953.

W. Morris Shillinglaw, Jr., and John S. Catron, Las Vegas, for appellants.

H. E. Blattman, Las Vegas, for appellee.

McGHEE, Justice.

The sole question presented by this appeal is whether a valid charitable trust was created by the will of Byron T. Mills, deceased, which provided, in part:

"All of the balance of my estate real, personal and mixed, wheresoever it may be found and of whatsoever it may consist, I give and devise unto deformed and crippled children in such manner as my executors may arrange for."

Appellants are the executors of the will of the said Byron T. Mills. They brought a petition below for a declaratory judgment against Ruth W. Webb, appellee for construction of the above provision. Appellee was the niece and sole heir at law of the testator. The lower court made the following finding of fact, together with others, to wit:

"5. That the language as used by testator fails to designate the charitable

purpose and object with sufficient definiteness and certainty to enable it to be executed or carried out; and permits the Trustees or Executors to distribute the residue of said estate to objects not charitable, and as they 'may arrange for' and according to their discretion."

and ruled the provision was therefore void.

Appellants assert the testator intended to and did create a valid charitable trust; that its purpose is designated with sufficient definiteness and certainty; and that the failure of the testator to set out a plan for the application of the property to the charitable purpose specified does not invalidate the trust.

That the testator intended to create a charitable trust is not seriously controverted by appellee, but her argument is, that while indefiniteness of beneficiaries of a public charitable trust is permitted, indefiniteness of purpose is not; and, further, that the executors may devote the property of the trust to objects not charitable, specifically, "deformed or crippled children who are not in need or who in no way can be classed as the subjects of charity."

We are, therefore, concerned with whether or not the charitable purpose or object is sufficiently designated, and whether the executors are given power to apply the residue of the estate to non-charitable purposes. Both questions must be ruled in favor of appellants.

■ Counsel for both appellants and appellee have made extensive reference to cases from other jurisdictions on the nature of charitable trusts and the requisites for their creation and administration, as well as to annotations and treatises on the subject, but we deem it unnecessary to review the field, as in this state the general matter is so well settled by two earlier opinions of this Court: Santa Fe Lodge No. 460 v. Employment Security Comm., 1945, 49 N.M. 149, 159 P.2d 312; and Rhodes v. Yater, 1921, 27 N.M. 489, 202 P. 698, 699, 22 A.L.R. 692.

In the first of the cases cited, after discussing the English Statute of Charitable Uses which is in force in this state, and reviewing considerable authority, the opinion quotes with approval the following from 14 C.J.S., Charities § 1:

"While usually the word 'charity' implies a gift in some form, in its widest sense it denotes all the good affections which men ought to bear toward one another, and in that sense it embraces what is generally understood by benevolence, philanthropy, and good will. In its more restricted and common sense it means relief or alms to the poor. Neither of these meanings is precisely descriptive, however, of the sense in which the courts use the term

in applying the law relating to charities; in the legal sense it has a much wider significance than in common speech, it is not confined to mere almsgiving or the relief of poverty and distress, but extends to the improvement and promotion of the happiness of man."

That a bequest to "deformed and crippled children" is charitable cannot be questioned under either modern definition or the English Statute of Charitable Uses.

■■ But, the appellee argues, as above stated, though the purpose be charitable, it is not sufficiently designated. The same argument was before this Court in Rhodes v. Yater, supra. There the testator provided half of his residuary estate should be used " 'for the purpose of evangelization and the publication of manuscripts,' theretofore prepared by him," and appointed trustees to "direct the use of the money in the preaching of the gospel as may to them seem best." Pertinent portions of that opinion read:

" * * * The primary duty of a court is to ascertain the desire of the testator, as he has expressed it, and to carry it to fulfillment unless public policy or general rules of law imposes a prohibition. William Rhodes expressed his wish that one half of his residuary estate should become the property of his children. The other half,

with a benevolent intention to benefit his fellow men, he left to be used for the purpose which he thought most likely to conduce to that end, the preaching of he gospel. *If this property under the trust was devoted to the relief of physical distress and suffering, the class of beneficiaries being designated, there would be no hesitation in carrying out his directions.* Man has spiritual needs as well as physical ones, and a bequest for the purpose of ministering to those needs is charitable. *The fact that the beneficiaries are not designated as individuals nor as a distinct class, but may be any to whom the beneficence of the testator may reach, does not change the character of the trust.* In every public charity the exact individuals who may be benefited are unknown. The wish and intent of the testator are plain. * * * (Emphasis supplied.)

"It is said that the trust is indefinite in purpose since the exact method in which it is to be administered is not stated. By its terms it is to be used 'for the purpose of evangelization' and 'in the preaching of the gospel.' To evangelize is to preach the gospel; so there is no contradiction in these terms. The preaching of the gospel must be carried out through some human agency, and it is to be presumed that the fund is to be used in the assistance of

those who are engaged in that work. True, the agents through which the result will be accomplished are not named; that being left to the trustees. In other words, *the trustees select the individuals who will carry out the wish of the testator* by the preaching of the gospel. *But that does not make the purpose indefinite.* It merely leaves to the trustees the selection of the agency through which that purpose is to be accomplished. (Emphasis supplied.)

"* * * it is generally held that the beneficiaries need not be named nor even identified as belonging to any particular class or locality. This should be the true rule, for the inherent idea of a public charity is that its benefits shall reach an indefinite number of people, and the broader the benevolence of the giver the wider his beneficence extends, and the greater in number and more impossible of identification become the recipients of his bounty."

█ The governing liberal rules concerning charitable trusts are contained in the foregoing quotation. Their further restatement is unnecessary, and under them a trust for deformed and crippled children cannot be defeated on the ground the charitable purpose stated is too indefinite and uncertain.

Appellee relies upon the case of Hadley v. Forsee, 1907, 203 Mo. 418, 101 S.W. 59, 60, 14 L.R.A.,N.S., 49. In that case, after the testator had given all of his property to his wife, he directed her as follows:

"'First, that she will pay all of my just debts; secondly, that after providing for her own wants and comforts, I leave to the discretion of my dear wife to give to such of my relations such aid or assistance as my dear wife may, of her own will think proper and just * * *.

"'Secondly. That the balance of my said property will be given to advance the cause of religion, and promote the cause of charity, in such manner as my dearly beloved wife may think will be most conducive to the carrying out of my wishes.'"

While the opinion in this case contains much discussion of the nature of charitable trusts and the requirements for their validity, the controlling portion of the decision seems to be:

"But the testator did not express in this will an intent to advance the cause of religion and promote the cause of charity in general; but he indicated a purpose to advance the cause of some *particular* religion and promote the cause of some *particular* charity, but he left us without information as to the particlar religion or the particular char-

ity he had in mind. He gives us to understand that he has confided his purpose in that respect to his wife and will be satisfied with whatsoever she may do. How is the court to know whether or not the wife is carrying out those directions; or, if at her death the court should appoint another trustee, who is to instruct him in his duties? *The testator was not willing to put his property in a condition that a chancellor might give it to the advancement of any religious order* he might select *or any charity* he might prefer. *He trusted that matter to his wife alone,* and, as *she is now dead,* no one can ever know what his wishes in that respect were." (Emphasis supplied.)

In the instant case the purpose of the trust has not been confided to a selected person—it is specified for all to see in the provision made by the testator in his will, and the case of Hadley v. Forsee, supra, is, therefore, clearly distinguishable from the present case.

Appellee also asserts the trust fails because the class to be benefited is not described with certainty in that crippled and deformed children do not constitute a class because the same might or might not include various degrees of crippling or deformity and such states might arise from various causes and conditions. Would appellee contend that a trust for the relief of poverty fails when it does not provide how "poor" those to be benefited must be, or that their poverty must be the result of some particular cause? In the rejection of such contention we deem it unnecessary to cite authority.

Addressing ourselves now to the second consideration before us, that under the terms of the will the executors may apply the trust property to non-charitable purposes, we note at the outset that appellee is apparently under the belief a charitable trust to be valid must be confined solely to the aiding of the indigent. All the authorities are in agreement that a charity which incidentally benefits the wealthy as well as the poor is none the less charitable. See the definition of "charity" in 14 C.J.S. Charities, § 1, quoted supra from the Santa Fe Lodge case. We find the following in Bogert on Trusts and Trustees, Vol. 2A, sec. 373, p. 108:

"Trusts to relieve sickness and pain or prevent disease or suffering need not be confined to the poor. Their benefits may be extended to any who need their ministrations. There is social advantage in relieving and reducing the physical and mental ailments of all mankind * * * It is to the advantage of the state to have as many agencies as possible operating to bring about health for the whole citizenry. Society is interested in

having all its members, rich and poor in good physical condition, capable of being productive and of caring for themselves."

See also 3 Scott on Trusts, sec. 372, p. 1996.

 Appellee relies on the case of In re Kline's Estate, 1934, 138 Cal.App. 514, 32 P.2d 677, 678. That case held where a will directed the residue of an estate to be paid "to such persons, charitable organizations and/or corporations * * * organized for the purpose of aiding and for the betterment of crippled children, the persons, charities or organizations that shall receive the benefit of this charitable trust to be selected by my said trustee in its absolute and uncontrolled discretion", that a valid charitable trust was not created thereby. The court ruled the adjective, "charitable," did not modify either "persons" or "corporations," and that the trustee was authorized to apply the trust property to uses that were or might be non-charitable. The court there was obviously disturbed by the fact a hospital operating under corporate organization for profit could have been given the fund. The California case in no way parallels the present one. The discretion given the executors here is, as in Rhodes v. Yater, supra, solely that of selecting the agency through which the charitable intent of the testator to benefit deformed and crippled children is to be carried out.

The following language from the leading case of Grant v. Saunders, 1903, 121 Iowa, 80, 95 N.W. 411, 100 Am.St.Rep. 310, is expressive of the true construction to be given the particular language in testator's will: "in such manner as my executors may arrange for."

" * * * It is contended, however, that the authority given the trustee to distribute the fund 'to such objects as in her judgment' are worthy of assistance, and 'at such times' and to such 'persons as she thinks best to help,' left it optional with her to select any one as the recipient of the testator's bounty, whether within the class designated as 'the poor' or not. But to so hold would require a strained and unnatural construction of the language used, and it would further require us to disconnect it from the remaining language of the clause, and construe it without reference thereto. The bequest is specifically stated to be for the benefit of the poor, and the discretion given the trustee to select such objects as are worthy must relate back to the subject of the bequest. The objects which the testator had in mind may have been individuals among the general class named, or some institution or association having for its object the benefit of the poor. * * * But, however this may be, it is clear that the dominant thought and intent was that the fund

584

should be devoted to the help of the poor. The further direction that assistance be given to the persons whom she might think it best to help must also be held to mean those selected from the class designated as 'the poor.'"

The clause from the present will quoted above can only be read in conjunction with the remainder of the provision in which it appears, and the direction is then clear that the executors are empowered only to apply the property for the benefit of deformed and crippled children. As we said in Rhodes v. Yater, supra:

"* * * we will not presume in advance that the trustees will violate their trust or will refuse to perform their duties. Human society is founded upon the virtue of its members, not upon their wickedness, and this court must presume integrity rather than dishonesty. The testator has selected his trustees, and has, without doubt, named men in whom he had full confidence and to whose character he was willing to trust the control of this fund. We cannot presume in advance that his confidence was misplaced."

The judgment of the lower court will be reversed with direction to enter judgment for appellants in accordance herewith. Appellants will recover costs of this appeal.

It is so ordered.

SADLER, C. J., and COMPTON, LUJAN and SEYMOUR, JJ., concur.