386 P.2d 711

Esther DELANEY, Administratrix of the Estate of Paul Delaney, deceased, Esther Delaney, as widow of Paul Delaney, deceased, and Mrs. Celia Thompson, as the lawful child and heir of Paul Delaney, deceased, Plaintiffs-Appellants,

v.

The FIRST NATIONAL BANK IN ALBUQUERQUE, a corporation, Defendant-Appellee,

Francis Delaney, Intervenor-Appellee.

No. 7221.

Supreme Court of New Mexico.

Sept. 3, 1963.

Rehearing Denied Dec. 4, 1963.

B. J. Sholer, F. L. Nohl, Albuquerque, for appellants.

Rodey, Dickason, Sloan, Akin & Robb, William C. Schaab, Albuquerque, for defendant-appellee, First Nat. Bank in Albuquerque.

W. A. Keleher, William B. Keleher, Albuquerque, for intervenor-appellee, Francis Delaney.

CHAVEZ, Justice.

Esther Delaney, as the administratrix of the estate of Paul Delaney, deceased, and as his widow, and Mrs. Celia Thompson, as the lawful child and heir of Paul Delaney, deceased, filed suit against The First Na-

tional Bank in Albuquerque, as trustee, for an accounting and for distribution of the corpus of the trust which had been established by a codicil to the last will and testament of Lawrence T. Delaney, deceased. Francis Delaney, as residual beneficiary under the will of Lawrence T. Delaney, intervened. After trial to the court, without a jury, the issues were decided in favor of the intervenor, Francis Delaney. This appeal followed.

Lawrence T. Delaney's last will and testament was executed on November 29, 1945. After making certain specific bequests, none of which are controverted here, the residuary was devised and bequeathed in equal shares to his adopted sons, Francis Delaney and Paul Delaney, or the lawful heirs of their bodies in the event they died prior to the will becoming effective. The will further provided that if Paul Delaney were to predecease the testator, without leaving lawful heirs of his body surviving, then the part of the residuary which would go to him under the will is to go to Francis Delaney, or to the heirs of his body.

By a codicil to the will, dated April 17, 1946, Lawrence T. Delaney left one-half of the residue of the estate to Francis Delaney and the other one-half to the defendant, The First National Bank in Albuquerque, as trustee for the use and benefit of Paul Delaney, or his surviving lawful child or children if he be dead, and with the provision that Paul Delaney was to receive from the trustee the sum of $50 per month, the trustee to have the right to pay a greater sum to, or for, or on behalf of Paul Delaney in the event of an emergency such as serious illness or unusual medical services.

By a second codicil to the will, dated July 30, 1946, Lawrence T. Delaney changed the designation of the executors named in the will from Francis Delaney and Paul Delaney to Francis Delaney alone.

Item (b) of the first codicil states:

"In event that Paul Delaney shall die before this will becomes effective without leaving a lawful child or children, or shall die after the will becomes effective leaving no lawful child or children, then it is my will that Francis Delaney (or his children if he be dead) shall in all things succeed Paul Delaney hereunder, and shall take everything that Paul Delaney would have taken had he lived, excepting that if Paul Delaney be dead, and Francis Delaney shall inherit his interest, Francis Delaney shall take such interest outright and the provision I have made for a trusteeship for Paul Delaney shall be disregarded and terminated."

At the time of the making of the will on November 29, 1945, and the codicils on April 17, 1946, and July 30, 1946, Francis Delaney was married and had three natural children, while Paul Delaney was unmarried. On December 23, 1946, Paul Delaney

married Esther Delaney, who had previously been married to and divorced from Francis Klayer and she had four natural children by Mr. Klayer, one of whom is Celia Thompson, nee Celia Frances Klayer.

Lawrence T. Delaney died on February 9, 1947, in Albuquerque, New Mexico. His will and the codicils thereto were admitted to probate on March 25, 1947, and the estate was probated. The defendant, The First National Bank in Albuquerque, received one-half of the residue of the estate, as trustee.

On June 27, 1949, in the county court in and for the city and county of Denver, Colorado, Paul Delaney adopted Celia Thompson as his legally adopted child and heir at law. At the time of the adoption, Celia Thompson was unmarried, 25 years of age, and resided in Denver, Colorado, and Paul Delaney was 39 years of age. Celia Thompson married Samuel Thompson in 1956. In 1943–1944, Celia Thompson lived with her mother in New Mexico from four to six months and spent her two-weeks vacation every other year in New Mexico from 1946 to 1949.

Paul Delaney died intestate on April 28, 1960, leaving surviving him his wife, Esther Delaney, and his adopted child, Celia Thompson. He had no natural children.

Both Francis Delaney and Paul Delaney were the adopted sons of Lawrence T. Delaney. Neither Paul Delaney nor Francis Delaney knew of the contents of the will until it was read after the death of Lawrence T. Delaney. Lawrence T. Delaney did not discuss the will with Francis Delaney or Paul Delaney prior to his death. The testator had no natural children.

In the court below, Esther Delaney contended that she, as administratrix of the estate of Paul Delaney, deceased, was entitled to the corpus of the trust established in the codicil to the will of Lawrence T. Delaney because the condition of the trust had been fulfilled, i. e., Paul Delaney died leaving a surviving lawful child, and that the trust was terminated by the demise of Paul Delaney. Esther Delaney contended that she, individually and as the widow of Paul Delaney, was entitled to the corpus of the trust for the same reasons. Celia Thompson contended that she, as the adopted daughter of Paul Delaney, was entitled to the trust for the same reasons. Francis Delaney contended, on the other hand, that the alleged adoption of Celia Thompson has no validity under New Mexico law, because of the relative ages of Paul Delaney and Celia Thompson, and that, therefore, under New Mexico law, Paul Delaney did not leave surviving him a lawful child, with the result that Francis Delaney is entitled to the corpus of the trust.

Resolution of this appeal is dependent upon the correct answers to the following two questions: (1) Will New Mexico rec-

ognize the Colorado adoption of Celia Thompson by Paul Delaney so that he left surviving him a lawful child? and (2) if New Mexico will give credence to the Colorado adoption, what effect does this have on the disposition of the trust property?

█ At the time of the adoption of Celia Thompson by Paul Delaney in Colorado, New Mexico had a statute, § 22–2–13, N.M.S.A., 1953 Comp., which permitted the adoption of an unmarried adult by an adult person, provided the person adopting was at least twenty years older than the person adopted. Since Paul Delaney was only thirteen years older than Celia Thompson, who was twenty-five years of age at the time, the adoption could not have been accomplished in New Mexico. Thus, intervenor-appellee contends that the Colorado adoption was contrary to the public policy in New Mexico. However, the fact that a judgment entered by a foreign court could not have been entered by a New Mexico court, because it would have offended the public policy of New Mexico, will not permit the courts of New Mexico to deny it full faith and credit as required under Art. IV, § 1, U.S. Constitution. The rule was most clearly stated in Hieston v. National City Bank of Chicago, 51 App.D.C. 394, 280 F. 525, 24 A.L.R. 1434:

"* * * with complete jurisdiction of the subject-matter and the parties, a judgment shall be accorded the same faith and credit in every court within the United States as it has by the law and usage of the courts in the state or territory where it was originally rendered; and this is true, though the cause of action upon which the judgment is based is against the law and public policy of the state or territory in which enforcement is sought."

In the case of In re Morris' Estate, 56 Cal.App.2d 715, 133 P.2d 452, it was held that a decree of adoption of an adult in Rhode Island, where such an adoption was authorized by statute, must be given full faith and credit in California, notwithstanding that an adoption of an adult was contrary to California policy. The law of California authorizes only the adoption of minor children and it is legally impossible to adopt an adult under the California law. Compare, Hughes v. Fetter (1951), 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212.

In Zanzonico v. Neeld, 17 N.J. 490, 111 A.2d 772, cited by appellee, the court held that where an adoption was validly effected in Italy by American residents, so as to make it possible to bring the child to America, such decree was recognized by the New Jersey court for inheritance purposes, as against the argument that such decree should not be recognized, since the child had not resided with the parties seeking the adoption for a period of one

year prior to the hearing of the petition for adoption, as required by New Jersey law.

It is of interest to note that in New Jersey the courts have been set straight by statute. Chapter 234, Laws 1952, N.J.S.A., § 9:3–15, provides:

"1. The entry of a judgment or decree of adoption in any State, territory or possession of the United States, including the District of Columbia, shall have the same force and effect as though such judgment or decree of adoption had been rendered and entered in this State. The provisions of this act shall be applicable to judgments or decrees of adoption heretofore entered, as well as to such judgments or decrees as shall hereafter be entered in any such State, territory or possession of the United States, including the District of Columbia."

Although some courts regard the rule as to recognition of a foreign adoption decree as based on comity, Industrial Trust Co. v. Glanding, 28 Del.Ch. 125, 38 A.2d 752, aff'd. 28 Del.Ch. 499, 45 A.2d 553, other courts hold that the recognition is based not alone on comity, but also upon the full faith and credit clause of the U. S. Constitution. Mott v. First Nat. Bank of St. Petersburg, 98 Fla. 444, 124 So. 36; McNamara v. McNamara, 303 Ill. 191, 135 N.E. 410, cert. denied 260 U.S. 734, 43 S.Ct. 95, 67 L.Ed. 487; Succession of Caldwell,

114 La. 195, 38 So. 140; Ross v. Ross, 129 Mass. 243; In re Crossley's Estate, 135 Pa. Super. 524, 7 A.2d 539.

Restatement, Conflict of Laws, § 143, p. 209, states the rule as follows:

"The status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter state to the status of adoption when created by its own law." See also, Anno. 73 A.L.R. 964, 968.

Appellee also cites Hood v. McGehee, 237 U.S. 611, 35 S.Ct. 718, 59 L.Ed. 1144, which holds that a state may, in its statute of descent, exclude a child adopted by proceedings in other states, as the Alabama statute provided, without violating the full faith and credit clause of the federal constitution. The Alabama cases are now limited by statute. 7 Ala.Code, 1958, Tit. 27, § 9.

■ The public policy in New Mexico is to treat adopted children the same as natural children. Sections 29–1–17, 22–2–19, N.M.S.A., 1953 Comp. See also § 31–16–1, N.M.S.A., 1953 Comp., by which an adopted child is grouped with lineal descendants in determining the amount of the decedent's estate which is exempt from inheritance tax, and § 31–16–2, N.M.S.A., 1953 Comp., which imposes an inheritance tax upon estates passing to parent or parents, husband, wife, lineal de-

**198**

scendants, or legally adopted child. See also Hahn v. Sorgen, 50 N.M. 83, 171 P.2d 308.

■ Also, wills must be construed in harmony with the public policy of placing an adopted child on a level with natural children. In re Upjohn's Will, 304 N.Y. 366, 107 N.E.2d 492; In re Heard's Estate, 49 Cal.2d 514, 319 P.2d 637; Brock v. Dorman, 339 Mo. 611, 98 S.W.2d 672.

■ Adoption, by all the tests, is a status like any other relational status. It is created by acts of the parties plus the effect of law; it is a relationship which cannot be terminated by the sole will of the parties; it is the source of a bundle of rights, duties and obligations, and is of great interest to the state. It should, then, be treated by the courts in the same way they treat other types of domestic status.

■ Accordingly, we are constrained to give credence to the Colorado adoption of Celia Thompson by Paul Delaney and hold that she is his lawful child.

The court below found:

"8. That under the terms of the codicil of April 17, 1946, one-half of the rest and residue of the Estate of Lawrence T. Delaney was devised and bequeathed unto First National Bank in Albuquerque as Trustee, and in trust for the use and benefit of his adopted son, Paul Delaney, for the life of Paul Delaney."

Under the terms of the codicil, it was error by the trial court to so find. There is no expression in the codicil of the intent of the testator to limit the interest of Paul Delaney to a life estate. There were only two ways in which Paul Delaney's interest in the trust could have been terminated: (1) If Paul Delaney were to die before the will and codicils became effective without leaving a lawful child or children; and (2) if Paul Delaney were to die after the will and codicils became effective leaving no lawful child or children. As the first contingency clearly did not occur, we are concerned only with the second. We held above that Celia Thompson was the lawful child of Paul Delaney, but the question still remains, was she a lawful child as contemplated by the codicil? Appellees contend that she was not, as the testator did not know her and because she was adopted subsequent to the death of the testator and the probate of his will. It is relevant at this time to consider the language employed by the will itself, which was changed by the first codicil. When dealing with the possibility that Paul Delaney might die, the testator provided in the will that Paul Delaney's share was to pass to Francis Delaney if Paul Delaney died "without leaving lawful heirs of his body surviving him." In the first codicil, the phrase "the lawful heirs of his body" was deleted and the phrase "a lawful child or children" was inserted in lieu thereof.

■ The term "heirs of the body" means issue of the body, offspring, progeny, natural children, physically born and begotten by the person named as parent. The expression "heirs of the body" is a restrictive term, as compared with the term "heirs" generally, or with the term "child or children," and when used in such instruments it must be construed to mean and include only children actually begotten and born of the parents in question. Cutrer v. Cutrer (Tex.Civ.App.1960), 334 S.W.2d 599, aff'd. 345 S.W.2d 513.

■ In contrast, "lawful child" is not so narrow. While "lawful child" certainly encompasses natural children, it may also be construed to include those children who have been decreed by a competent court of law to be the children of the named parent. It is true that the term "lawful child" has been limited under certain circumstances to other than adopted children, Cochran v. Cochran, 43 Tex.Civ.App. 259, 95 S.W. 731, but when the phrase is read in the light of the change in the selection of terms by the testator for his will and his first codicil, it appears to have been the intent of the testator to change the class of persons whose existence would satisfy the requirements of the codicil so as to include other than natural children. In re Upjohn's Will, supra; In re Heard's Estate, supra; Brock v. Dorman, supra.

■ That Lawrence T. Delaney might not have known Celia Thompson will not aid intervenor-appellee. Lawrence T. Delaney could not have known any of the legitimate children of Paul Delaney, whether they be natural or adoptive, as Lawrence T. Delaney died only six weeks after Paul Delaney's first and only marriage, and Paul Delaney had not adopted anyone up to that time. Lawrence T. Delaney was surely aware of the possibility that Paul Delaney might adopt a child or children, as Lawrence T. Delaney had adopted two children himself.

■ Appellants contend that Francis Delaney's interest in Paul Delaney's share was terminated by the adoption of Celia Thompson by Paul Delaney. In order to determine if this contention is correct, inquiry into the nature of Francis Delaney's interest is relevant. By the terms of the codicil, Francis Delaney was to take Paul Delaney's share in the trust upon the occurrence of one of two contingencies: (1) If Paul Delaney died before the effective date of the will and codicils leaving no lawful child or children; and (2) if Paul Delaney died after the effective date of the will and codicils leaving surviving him no lawful child or children. Only if one of these two situations existed at the death of Paul Delaney, was Francis Delaney to succeed to Paul Delaney's interest. This is a classic example of a contingent remainder. Baum

v. Continental Illinois National Bank and Trust Company of Chicago (7 C.C.A., 1956), 230 F.2d 377; Miller v. Woodbury Trust Co., 2 N.J.Super. 497, 64 A.2d 634. Being a contingent remainder, Francis Delaney's interest was subject to never coming to fruition due to the happening of one of the contingencies. As one of the contingencies did transpire, i. e., Paul Delaney died after the effective date of the will and codicils leaving surviving him a lawful child, Francis Delaney can take nothing by way of his contingent remainder. It could well be said that the reason for employing different terminology in the codicil than was used in the will was to permit such an eventuality as occurred to serve to terminate Francis Delaney's interest in Paul Delaney's share.

 In determining the testator's intention, the true purpose of the inquiry is to ascertain not what he meant to express, apart from the language used, but what the words he has used do express; not to add words to those in the will to contradict its language, or to take words away from those in the will, even though the court may believe that the actual disposition of the testator's property which results through changing circumstances, was not contemplated by him. 4 Bowe-Parker Rev., Page on Wills, § 32.1, pp. 229–232; Lamphear v. Alch, 58 N.M. 796, 277 P.2d 299; Brown v. Brown, 53 N.M. 379, 208 P.2d 1081.

Having determined that Francis Delaney's contingent interest in Paul Delaney's share of the estate of their adoptive father was terminated by the death of Paul Delaney, subsequent to the effective date of the will and codicils, leaving surviving him a lawful child, it now becomes necessary to resolve appellants' conflicting positions.

 It should be said that the trust was personal to Paul Delaney alone, in that its overt purpose was to preserve Paul Delaney's share in Lawrence T. Delaney's estate, to assure Paul Delaney of a small income throughout his life, and to afford him medical attention in the event of an emergency. Once this purpose had been accomplished, there is no reason for the trust to continue. Therefore, the trust also terminated upon the death of Paul Delaney. Bogert, 2d Ed., Trusts & Trustees, Ch. 47, § 1002.

Inasmuch as the learned court below did not deal with the conflict in the positions upon which the respective appellants base their claims, the judgment heretofore entered in this cause is hereby reversed and the cause remanded to the district court, with direction to proceed in a manner not inconsistent herewith, to determine the merits of the claims of each appellant, and to enter judgment accordingly.

It is so ordered.

CARMODY and MOISE, JJ., concur.