513 P.2d 713

**Ismael MARQUEZ and Carmen Marquez, his wife, Plaintiffs-Appellants,**

v.

**Crecencio MARQUEZ, also known as Crescenio Marquez, Defendant-Appellee.**

**No. 9629.**

Supreme Court of New Mexico.

Aug. 24, 1973.

Ahern, Montgomery & Albert, Robert D. Montgomery, Michael L. Danoff, Albuquerque, for plaintiffs-appellants.

Chavez & Cowper, Belen, for defendant-appellee.

## OPINION

OMAN, Justice.

This is an appeal by plaintiffs from a judgment declaring defendant to be the owner in fee simple of a certain parcel of real estate; declaring plaintiffs to have no lien upon, interest in, or right or title to the property; ordering plaintiffs to forthwith deliver possession of the property to defendant; and ordering plaintiffs to account to defendant for the mesne profits derived from crops grown on the property between April 23, 1968 and the date of delivery of possession to defendant. We affirm.

Plaintiffs are husband and wife. Defendant is the father of plaintiff, Ismael Marquez. Upon the death of defendant's first wife, the real estate in question became the separate property of defendant, and was his separate property and estate upon his marriage to Altagracia Marquez on July 7, 1947. Subsequent to his marriage to Altagracia, the property was sold to the State of New Mexico for delinquent taxes.

After the lapse of the one year period, during which defendant had a prior right to purchase the property [§ 72–8–31, N.M. S.A.1953 (Repl.Vol. 10, pt. 2, 1961)], the Middle Rio Grande Conservancy District, hereinafter referred to as the District, purchased the property. The trial court found that the purchase by the District was made after the period of redemption had expired, and this finding has not been attacked. The purchase by the District was accomplished some time prior to August 19, 1954, and was made pursuant to the District's authority under § 75–30–20, N.M.S.A.1953 (Repl.Vol. 11, pt. 2, 1968). On August 19, 1954, defendant purchased the property from the District with community funds belonging to him and his wife, Altagracia. Title was taken from the District by quitclaim deed naming defendant as grantee.

On April 23, 1968, defendant purportedly conveyed the property by quitclaim deed to plaintiffs as joint tenants. Defendant's wife did not join in this purported conveyance. Plaintiffs contend the property was conveyed to them as a gift from defendant.

Altagracia died July 26, 1969. Plaintiffs filed their complaint in this suit on August 11, 1971, whereby they sought to quiet title to the property in themselves. Defendant answered and counterclaimed whereby he sought to have title to the real estate quieted in himself, possession thereof delivered unto him, an accounting by plaintiffs for mesne profits, and other relief not here pertinent. As above stated, judgment was entered in favor of defendant.

Plaintiffs rely upon three separately stated points for reversal, but in the statement of proceedings in their brief in chief they admit: "The sole issue on appeal is whether or not Altagracia's failure to join in that deed [the quitclaim deed of April 23, 1968 whereby defendant purportedly conveyed the property to plaintiffs], in the circumstances of this case, made the deed a nullity." This is the issue to which we shall primarily address ourselves in this opinion.

The position of plaintiffs is that the purchase of the property by defendant from the District amounted to a repurchase or a redemption by him of his separate estate, which he could properly convey without the joinder therein of his wife, and that defendant, as the survivor of the community, has only a claim for the amount of the community funds used to redeem the prop-

erty from the District. They rely upon the case of Langhurst v. Langhurst, 49 N.M. 329, 164 P.2d 204 (1945), and upon their position that the holding in that case should be applied to the purchase of the real estate by defendant from the District, since the District is a State agency and but "another arm of the sovereign."

Section 72–8–31, supra, provides:

"*Right to repurchase—Persons entitled to repurchase—Restriction period on sale.*—The person, or any lienholder, whose title to or interest in property has been extinguished by the issuance of a tax deed to the state shall have the prior right to repurchase such property.

"For a period of one [1] year after the date any tax deed to the state has been recorded, the state tax commission shall not convey any property acquired by such tax deed to any person other than one entitled to repurchase the property. Provided, however, that the prior right to repurchase shall continue after the expiration of one [1] year from the date the tax deed to the state has been recorded and until the property acquired by the state by virtue of such deed is sold at public auction or at private sale as in this act provided."

Section 75–30–20, supra, provides:

"*Purchase of property sold for delinquent taxes.*—The board [of the District] shall have the power to bid in and hold for the use and benefit of the district and with like effect as any other purchaser, any property sold for delinquent taxes or district assessments and to purchase from the county or other owner the tax sale certificate or duplicate tax sale certificate outstanding against any property within the district. At the expiration of the period of redemption under any tax sale of property within the district, the board may, at its election pay all taxes, penalties, interests and costs represented by the tax sale certificate or duplicate tax sale certificate therefor and thereupon the county

treasurer shall execute and deliver a tax deed conveying said property to the district."

■ It is apparent from a reading of § 72–8–31, supra, that it refers to the right to repurchase from the State through the State Tax Commission. It is equally apparent from a reading of § 75–30–20, supra, that the District has the power to acquire and hold, as any other purchaser, property sold for delinquent taxes. The District acquired an independent and paramount title to the property upon its purchase thereof from the State. Compare Alamogordo Improvement Co. v. Hennessee, 40 N.M. 162, 56 P.2d 1127 (1936). Defendant had no right to redeem or repurchase the property from the District for taxes, penalties, interest and costs as provided in § 72–8–32, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, 1961). His right to redeem or repurchase the property continued only so long as he had the right to recapture or redeem it from the State pursuant to § 72–8–31, supra.

In Langhurst v. Langhurst, supra, the property there in question was redeemed by the former owner by repurchase from the State in accordance with the provisions of § 72–8–31, supra. The property had not been sold to another purchaser and the owner's right of redemption had not expired.

■ A married person has the same right as a single person to redeem his or her separate property which has been conveyed by tax deed to the State. If he or she uses community funds for this purpose, the community may properly assert a claim for reimbursement. Langhurst v. Langhurst, supra. In the present case, as already stated, defendant did not redeem the property, he purchased it from the District with community funds.

■■ All property owned by a husband and wife before marriage, and that acquired by either during marriage by gift, bequest, devise or descent, with the rents, issues and profits thereof, is their respec-

tive separate property. Sections 57–3–4 and 57–3–5, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, 1962). All other real and personal property acquired by either, or both, during marriage, is community property. Section 57–4–1, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, 1962). Property acquired during marriage is presumed to be community property. Campbell v. Campbell, 62 N.M. 330, 310 P. 2d 266 (1957). If community funds are used to purchase the separate property of either spouse, such property becomes community property. McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250 (1938). Thus, it is apparent that upon the purchase by defendant of the property from the District with community funds, this property became community property.

The next question presented is the effect, if any, of the quitclaim deed of April 23, 1968, whereby defendant, without the joinder of his wife, purported to convey to plaintiffs, as joint tenants, this community property. Section 57–4–3, N.M.S. A.1953 (Repl.Vol. 8, pt. 2, 1962) provides:

> "*Management of community property vests in husband—Joinder in deeds and mortgages—Conveyance of separate property without joinder—Separate conveyances of community real property void—Exception.*—The husband has the management and control of the personal property of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community, other than testamentary, as he has of his separate estate; *but the husband and wife must join in all deeds and mortgages affecting real estate;* Provided, that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage; and, *Provided, further, that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect,* except, that the husband may convey directly to the wife or the wife to the husband without the

other joining in the conveyance." [Emphasis added]

This section of our statutes, insofar as applicable to the present case, is identical with Chapter 320, § 57–4A–7, Laws of 1973, which became effective July 1, 1973.

Insofar as pertinent to the question at hand, this statute is identical with the 1915 statute construed in Miera v. Miera, 25 N. M. 299, 181 P. 583 (1919). In that case this court, on motion for rehearing, gave literal effect to the language that " * * * any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect. * * *" A deed executed by the husband alone was held "void and conferred no title upon appellant [grantee]."

In Jenkins v. Huntsinger, 46 N.M. 168, 177, 125 P.2d 327, 332 (1942) we stated:

> "In Miera v. Miera, 25 N.M. 299, 181 P. 583, 586, we held in interpreting the statute here in question, that a deed of conveyance signed by one spouse alone was 'void and conferred no title.' See also El Paso Cattle Loan Co., etc., v. Stephens & Gardner, 30 N.M. 154, 228 P. 1076; Adams v. Blumenshine, 27 N. M. 643, 204 P. 66, 20 A.L.R. 369; Terry v. Humphreys, 27 N.M. 564, 203 P. 539; McKinney v. Merritt, 35 Idaho 600, 208 P. 244; Hughes v. Latour Creek Ry. Co., 30 Idaho 475, 166 P. 219.

> "We said in the closing paragraph in Terry v. Humphreys, supra [27 N.M. 564, 203 P. 541], something which seems significant, and which indicates that in this, as in all other cases where we have touched upon the question, we obviously always assumed there to be but one possible interpretation of this statute. We were never heretofore called upon to consider that the term 'void and of no effect' as used in this statute, could mean 'voidable', instead of 'having no validity from its inception.'

> " * * *

> " '* * *. As we construe the statute by its *plain terms* at the present time,

neither husband nor wife can make a transfer or conveyance of the real property of the community without the other joining in such conveyance or transfer, and if such transfer or conveyance is attempted of such real property of the community by either husband or wife alone, such transfer or conveyance is *void, and of no effect.'* (Emphasis ours.)"

 Plaintiffs also rely on estoppel and laches. Both issues were resolved against them by the trial court.

In McGrail v. Fields, 53 N.M. 158, 203 P.2d 1000 (1949), we refused to overrule our decision in Jenkins v. Huntsinger, supra, and stated at page 162 of 53 N.M. at page 1002 of 203 P.2d:

"In that case [Jenkins v. Huntsinger] it was determined that the husband had attempted to convey community real property by his deed alone. Subsequently the parties were divorced, and he became the sole owner of half of it. We held that the deed was absolutely void, and that it did not convey the part of the property allotted to the husband in the division as subsequently acquired property. We reviewed the authorities at great length, and concluded that the deed being absolutely void, *the grantor conveyed nothing by his deed and that he was not estopped to deny its validity.*" [Emphasis added]

As to the question of laches, the trial court found that defendant had made demand upon plaintiffs to surrender possession of the property to him, but plaintiffs refused. This finding is unattacked and is incompatible with a claim of laches on the part of the defendant. It is also inconsistent with plaintiffs' assertions that defendant stood idly by and asserted no claim to the property until plaintiffs brought their suit to quiet title.

 The defense of laches is not favored. It should be given effect only in those cases in which a party has been guilty of inexcusable neglect. Cave v. Cave, 81 N.M. 797, 474 P.2d 480 (1970);

Pratt v. Parker, 57 N.M. 103, 255 P.2d 311 (1953).

We agree with the trial court in concluding that defendant was neither estopped nor barred by laches from asserting and relying upon the invalidity of the deed by which the property was purportedly conveyed to plaintiffs.

The judgment should be affirmed.

It is so ordered.

McMANUS, C. J., and STEPHENSON, J., concur.