599 P.2d 1071

**In the Matter of the ESTATE OF Garland L. SHADDEN, Deceased.**

**Joyce M. SHADDEN, Personal Representative, Appellant,**

v.

**G. L. SHADDEN, Appellee.**

**No. 3564.**

Court of Appeals of New Mexico.

June 19, 1979.

Rehearing Denied June 28, 1979.

Wayne A. Jordon, Durrett, Conway, O'Reilly & Jordon, P.C., Alamogordo, for appellant.

Ralph D. Shamas, Hunt & Shamas, Roswell, for appellee.

## OPINION

WALTERS, Judge.

Garland L. Shadden died leaving a will which bequeathed certain items of his separate property to his son, appellee herein, including "a promissory note payable to me from the community in the amount of $9,000.00 which represents money I received from some of my personal property." The note, Exhibit 1 in the hearing below, read:

$9,000.00 Alamogordo, N.M., December 1, 1976 No. _____

Garland L. Shadden and Joyce M. Shadden after date, for value received jointly and severally promise to pay to the order of GARLAND L. SHADDEN 

the sum of NINE THOUSAND AND NO/100 DOLLARS

lawful money of the United States with interest at the rate of ___six (6)___
per cent per annum from ___default___ until paid.

The makers and endorsers of this note severally waive protest, demand and notice of protest and non-payment and agree to all extensions, partial payments before or after maturity and agree that they will pay ten per cent attorney's fees on the amount due, in case the same shall not be paid upon maturity, and is placed in the hands of an attorney for collection.

Payable at ___Alamogordo, New Mexico___ ___s/ Garland L. Shadden___

Due ___December 1, 1977___

The will further provided that, with the exception of family bibles, an oil royalty, and inherited real property, appellee would receive all the rest and remainder of decedent's separate property, and that appellant, his widow, would receive a life estate in the oil royalty and the inherited realty (with a gift over to decedent's sister), and all of decedent's interest in real and personal community property. If Mrs. Shadden preceased the testator, the will directed that "the *community* property . . . acquired during the term of our marriage" be distributed "as follows: A. The first $9,000.00 from the estate assets, I give, devise and bequeath to [X], as Trustee," and 50% of the balance (after a $1.00 devise to two other beneficiaries) "to [X], as Trustee for the use and benefit" of appellee, with discretion in the trustee to pay any reasonable sum to or for the appellee's benefit; and any balance remaining after the death of appellee was to be distributed to named grandchildren. The will also declared: "My wife and I have made written lists of items which we consider to be our respective sole and separate properties."

Appellee G. L. Shadden filed a claim against the estate for payment of the $9,000 promissory note which, as can be seen, had been signed only by Garland. The claim was disallowed by appellant Joyce Shadden, as personal representative of the estate. Following a formal hearing on the denial of the claim, the trial court entered judgment for $9,000 in favor of appellee against the estate, and the personal representative appealed. She raises issues of insufficiency of the evidence to support most of the court's findings; reception of inadmissible evidence; and the ineffectiveness and unenforceability of the note to transmit any interest to claimant thereunder by the will.

■ Fourteen of the court's twenty-three findings, which relate to the execution and terms of the will, the conduct of the widow with respect to benefits received under the will, the testator's intentions and the widow's knowledge of his intentions, etc., are asserted to be unsupported because the will was not introduced into evidence and no interpretations of its provisions or the testator's intent could have been reached by the court. The record received on appeal contradicts the basis of this claim. It contains all of the pleadings in the probate matter, including Joyce's petition for admission of the will to probate, a copy of the will bearing the filing stamp of the district court clerk, and an order admitting it to probate and appointing Joyce as the personal representative. The transcript of proceedings reveals further that at the outset of the hearing, the trial judge carefully reviewed the court file before him and recited for the record the various pleadings and proceedings had in the probate matter up to the date of the hearing. It was not necessary for appellee to move the will into evidence—it was before the court in the court record, and the court was bound to take judicial notice of the documents entered in the cause pending before it. *In re Landers' Estate*, 34 N.M. 431, 283 P. 49 (1929). Additionally, Mrs. Shadden, the appellant-widow, testified concerning her knowledge of decedent's intent, as did the attorney who drew the will and the promissory note in dispute, and from their testimony the court was justified in making its findings that decedent had sold separate property in El Paso owned by him prior to

his marriage to Joyce Shadden; that he had used the $9,000 from the sale for the purchase of the home of the parties in Otero County; that he considered the $9,000 to be a debt chargeable against his estate; that he intended the note as a device to assure payment of $9,000 in cash to his son rather than that the son and Mrs. Shadden share title to the home; and that the note evidenced Garland's intention that his son be given the preference of a creditor against his estate to the extent of $9,000.

■ Many of the court's findings were based upon the extrinsic evidence furnished by Mrs. Shadden and the attorney, but that evidence was properly received for, as we read in 4 Page on Wills, §§ 32.1, 32.2, 32.4, and 32.5:

The meaning and application of the terms of the will cannot be understood until the property and beneficiaries have been identified, which can be done only by extrinsic evidence; and, in many instances, until the court understands testator's situation with reference to his property, the natural objects of his bounty, and his contemplated beneficiaries. Evidence of this sort explains the meaning of the will and, not infrequently, this meaning is varied to the extent that the will evidently means something different, when read in the light of admissible extrinsic evidence, from the meaning which it appeared to have without such evidence. It is said that such evidence is received, not to defeat, but to aid in determining the testator's intent when that intent is uncertain from a reading of the will itself, and to explain or resolve doubts, not to create them. It has been held that the rule against admission of extrinsic evidence is not violated by the reception of extrinsic evidence which tends to show the intention of the testator as expressed in the will, although the evidence in such cases is probably unnecessary.

. . . [A]dmissibility of parol evidence . . . is generally raised where the will either upon its face, or *by reason of imperfect description of the subject-matter of the gift* or the object of testator's bounty, is ambiguous *or* uncertain. It is often stated, as a general principle, that evidence of extrinsic circumstances is admissible to aid in interpreting a will which is ambiguous. This rule is so general as to be of little value since questions as to what constitutes such an ambiguity as to require consideration of extrinsic evidence in order to ascertain the testator's intent are almost as numerous as the variations which can be conceived for testamentary dispositions. . . . [I]n many cases the ambiguity does not appear until extrinsic evidence is received, some courts holding that it is only in such cases that extrinsic evidence can be considered in the construction of the will.

While in some cases considerable stress is put on the fact that evidence is admissible because of the ambiguity of the will, this is because it is only in such cases that extrinsic evidence needs to be considered in construing the will. In any case, *whether the will appears ambiguous or not, the court is entitled to hear such extrinsic evidence of the surrounding circumstances as will put it in the place of testator.* Until this is done, the court cannot know whether the will is ambiguous or not.

While a few cases arise upon the admissibility of evidence where the will is free from ambiguity, extrinsic evidence is, nevertheless, not only admissible, but necessary in all cases for the purpose of identifying the beneficiaries *and the property* disposed of by will. This arises from the evident fact that no amount of clear, detailed description in a will can show whether there are any extrinsic objects or persons which correspond to such description. This fact underlies the rules concerning the admission of evidence to explain any written instrument, and is made necessary from the very nature of the case.

The question of the admissibility of extrinsic evidence is very frequently invoked where the description of either the property to be disposed of by will, or the beneficiary to whom the property is to be disposed of [sic], is ambiguous. . . .
Where the description in the will of the property disposed of does not apply completely to any property which testator owned, but does apply in part to property owned by testator, or where it is so general or incomplete that it cannot be determined without reference to external facts exactly what portion of the property owned by the testator is included; . .
extrinsic evidence is admissible to show the surrounding facts and circumstances in order to aid the court in determining what property testator meant to dispose of by the language which he has used. (All emphasis ours.)

We would acknowledge that some of the findings made, even though fully supported by the evidence, are supplementary findings rather than findings of ultimate facts, but they do no harm to appellant in our determination of this appeal as they do not present any conflict with facts gleaned from the will itself, from which we are required to determine the intent of the testator with respect to his bequests. *In re Will of McDowell*, 81 N.M. 562, 469 P.2d 711 (1970).

The exhibits introduced, to which appellant objects, were the promissory note, a handwritten draft from the attorney's file relating to the $9,000 bequest, and several handwritten lists of property entitled "Garland's separate property," "Gifts from my sons," "Inherited from my mother Mrs. S. F. Crenshaw," "Separate property of Joyce," "Community property of G. L. Shadden and Joyce Shadden," and some other lists without headings. Mr. and Mrs. Shadden's attorney testified that these lists were to be embodied in affidavits that had not been completed at the time of Mr. Shadden's death. However, the exhibits themselves were admissible as documents contemplated by § 45–2–513, N.M.S.A. 1978, and, in any event, they did not create a conflict with the dispositive provisions of the will. Appellant was not prejudiced by any of the findings attacked or by admission of the exhibits.

Appellant next argues that the promissory note was not decedent's separate property and it was not from the community; that the bequest created a specific legacy, and only delivery of the specific item bequeathed could satisfy the bequest. We admit to some inability to understand precisely the totality of this argument, but we assume appellant is urging that since the note was not signed by Mrs. Shadden, the promise to pay did not become Garland L. Shadden's separate property; that because the note did not fully comport with its description in the will (that is, it was not executed "from the community" because not signed by one of the members of the community), it was not the "specific item" bequeathed by the will to appellee.

The court's foremost duty in this matter is "to ascertain the desire of the testator, as he has expressed it, and to carry it to fulfillment," unless prohibited by public policy or general rules of law. *Rhodes v. Yater*, 27 N.M. 489, 491, 202 P. 698, 699 (1921). Justice Moise's opinion in *Gregg v. Gardner*, 73 N.M. 347, 388 P.2d 68 (1963), approved language describing the testator's intent as "the polestar" which must prevail, and noted that the attempt to arrive at the intention of the testator "is invariably the first and paramount inquiry." 73 N.M. at 356–57, 388 P.2d at 75.

Garland L. Shadden's testamentary provision referring to the promissory note creates some difficulty only because the note was not signed by Mrs. Shadden. Had it been, there could be no disagreement that it was separate property which Garland L. Shadden had the power to bequeath to his son. Neither public policy nor general rules of law prohibit a father from making a testamentary gift to his child. The trial court found that Mr. Shadden intended the note to be a preferential charge against his estate to the extent of $9,000, and we must review that most significant finding

by resolving all reasonable inferences in support of the lower court, disregarding evidence and inferences to the contrary. *Moore v. Bean*, 82 N.M. 189, 477 P.2d 823 (1970). What is indicated by the extrinsic evidence, the promissory note, and the will itself with regard to testator's intent? We think that together they are susceptible of the inference that Garland L. Shadden contributed "money that I received from some of my personal property"—his separate property—to the community, and that he considered the contribution a debt "payable to me from the community." This was evidence of transmutation of separate funds to an asset of the community, *cf. Chavez v. Chavez*, 56 N.M. 393, 244 P.2d 781 (1952), for which he would receive in return a promissory note evidencing the debt of the community. Mrs. Shadden did not deny the use of separate funds toward the purchase of their home, nor did she argue that her husband had not intended his son to have $9,000 from the community. She did not admit in any of her testimony that she too considered it a community obligation. Her failure or refusal to sign the note is rather pointed evidence that she did not agree that a community debt had been created. She, instead, points to the language of her husband's will which provides for a $9,000 bequest to appellee from community property in the event she predeceased her husband to urge that payment of the note was not intended until after her death. The disputed bequest cannot be so read.

The effect of Garland's signature on the note could do no more than commit his separate property and his share of the community personal property to repayment of the obligation stated on the note, because he was without power to encumber the community real property for its repayment without Mrs. Shadden's joinder. § 40–3–13, N.M.S.A. 1978. His signature was, however, effective to create a community obligation payable from the community's personal property. Section 40–3–14, N.M.S.A. 1978. And even though he was both maker and payee of the note, his devise of the note by will was a sufficient "endorsement" of it to meet appellant's challenge to its negotia-

bility and effectiveness, since we are here dealing with passage of title by will and not by rules of commercial law. Compare, 11 Am.Jur.2d 154–55, Bills and Notes, § 118. The note, without endorsement, was no less transferrable by will than an unendorsed security certificate bequeathed by will.

Thus, at the time of his death Garland L. Shadden held an asset as well as an obligation, a promissory note for $9,000 payable to himself from himself and as manager of the entire community personal property. Section 40–3–14, N.M.S.A. 1978. When he died, his separate and community personal estate became substituted as the obligor, and his beneficiary became the obligee.

The trial court found that G. L. Shadden had a preferential charge of $9,000 *against the estate*. Section 45–2–804 of the Probate Code (N.M.S.A. 1978) providing for payment of community debts upon the death of either spouse presents a clear conflict, in this case, with the provisions of § 40–3–13 which we have referred to above, in that it makes "the entire community property . . . subject to the payment of community debts." We have found no cases in this or other jurisdictions which have considered this perplexing inconsistency. We must, therefore, according to the rules of statutory construction, ascertain the manifest purpose sought to be accomplished by the legislature as expressed in both statutes without doing violence to either, insofar as possible. *Martinez v. Research Park, Inc.*, 75 N.M. 672, 410 P.2d 200 (1965); *State v. Blevins*, 40 N.M. 367, 60 P.2d 208 (1936).

The note reflects a community debt. Under § 45–2–804, the entire community may be subjected to its payment. But at the time of making the note, decedent was prohibited from encumbering community real property to pay the debt unless his wife also joined in the encumbrance. Does the death of the spouse who created the debt payable to himself enable one who has become the creditor by inheritance to step into a circumstance of repayment more favorable

than was enjoyed by the person from whom he inherited? We do not believe that was the purpose inducing enactment of § 45–2–804, N.M.S.A. 1978, particularly in view of the constraints of § 40–3–13.

Section 40–3–13 in the 1978 compilation requiring joinder of both spouses in real estate transactions is identical with § 57–4A–7, enacted by the 1973 legislature as a part of the Community Property Act of 1973. Section 57–4A–7 merely continued the provisions of § 57–4–3, N.M.S.A. 1953, which was originally enacted as § 1, ch. 84 of the Laws of 1915. Even prior to 1915 both spouses had to join in transactions disposing of or encumbering the family homestead. Section 16, ch. 37, Laws of 1907. Since at least 1901 (§ 6, ch. 62, Laws of 1901), it has been the legislative policy of this state to prohibit one spouse from alienating the community's real property without the other spouse's consent during the life of the marriage community, and to declare, since 1915, any such unilateral attempts "void and of no effect."

 On the other hand, it is clear that the purpose of § 45–2–804 B, subjecting the entire community to payment of community debts, was intended to protect third parties who had dealt in good faith with the community during its existence against dissipation of the estate by the survivor before outstanding debts were taken care of.

The situation before us is not totally unlike the problem which arose in *Jenkins v. Huntsinger*, 46 N.M. 168, 125 P.2d 327 (1942), and those in *McGrail v. Fields*, 53 N.M. 158, 203 P.2d 1000 (1949), and *Marquez v. Marquez*, 85 N.M. 470, 513 P.2d 713 (1973), wherein community property in each case was purportedly conveyed by the husband alone and the predecessor statutes to § 40–3–13, N.M.S.A. 1978, were interpreted. Justice Mabry's 1942 opinion, re-affirmed in the later decisions, dealt at great length with and analyzed numerous decisions of other jurisdictions concerning the effect of attempted alienations of community real property by the husband only. *Jenkins*, *supra*, established unequivocally that the statutory language had but one interpreta-

tion, i. e., that any such document was "of no effect for any purpose, and therefore, a nullity," and noted at 178–79, of 46 N.M. at 333–334 of 125 P.2d:

Obviously, when the legislature had come now to a recognition of what had been so often asserted by many, that the interest of the wife being more than a "mere expectancy" and having a real present interest in the property of the community, she should have an equal voice in the matter of its alienation; and public policy would dictate some such safeguards to any *attempt* to alienate without her joinder.

Ample reason can be readily found in support of a rule that would, under the theory upon which our community property law is administered, thus surely and effectively safeguard the wife's interest. She, an equal shareholder, and yet, with no voice in management of the property, should not be subjected to the hazards of alienation by the husband alone, where consent, waiver, or other like defenses to her claim might ordinarily be successfully asserted. The act, in other words, makes of the effort by the husband alone an "abortive attempt" and the "merest nullity".

If we apply the reasoning of these cited New Mexico cases, as well as the holdings in the earlier cases of *El Paso Cattle Loan Co. v. Stephens & Gardner*, 30 N.M. 154, 228 P. 1076 (1924); *Terry v. Humphreys*, 27 N.M. 564, 203 P. 539 (1922); and *Miera v. Miera*, 25 N.M. 299, 181 P. 583 (1919), we can reach no other result than to determine that the note could encumber no part of the community real estate for its repayment, for the simple reason that decedent had no power to do so in his lifetime. At the time of signing the note, the credit extended by the payee could only have been against the maker's separate property and the community's personal property.

 The circumstances of this case are not the same as they would be if a stranger to the community had taken decedent's note. He might well expect the entire community to answer for the debt if his bor-

rower died before payment, because the law grants him that expectation. But when a member of the community takes a note from himself as a member of the community, he is charged with the knowledge that any document purporting to pledge the credit of the community can only refer to the community's personal property. If we were to resolve this matter in any other way, we would be required to eviscerate the very essence of § 40–3–13, N.M.S.A. 1978. To give it the effect we herein propose, we preserve the intent of § 45–2–804 B in all circumstances except those rare situations similar to the instant case, and we keep safe the protection to the unconsenting spouse inuring in the mandatory joinder which has been required since New Mexico's territorial days. *See* Southerland Statutory Construction, Vol. 1A, § 28:12; Vol. 3, § 68:05 (4th Ed. 1974).

■ Since decedent could not have enforced payment of the note against the entire community estate, appellee, now standing in his shoes, cannot do so either. Thus, the trial court erred in failing to limit appellee's claim as one against the separate and community personal property of the estate.

■ Section 45–3–902 of the Probate Code sets the order in which the shares of distributees shall abate in order that debts, expenses and costs of administration may be paid. The first property to be applied to such payments is that which is not disposed of by will. In the instant case, Garland L. Shadden, by Paragraphs Second, Third and Fourth of his will, disposed of all of his property. The second type of property to be charged is real or personal property contained in residuary devises. Paragraph Third is the only residuary provision of the will, and in it "all of the rest, residue and remainder of my separate property and separate estate, both real and personal," was devised by decedent to G. L. Shadden, the appellee.

The trial court made no findings relating to the identification or value of the items of separate and community property. Thus it will be necessary to determine whether there are sufficient assets in the residuary devise to satisfy the appellee's claim of $9,000, even though this means that his claim must first be settled from assets he also was bequeathed by his father. If the residuary separate estate is insufficient, then the trial court must apportion the balance of the $9,000 charge against the last category to abate, each of the specific legacies provided in the will. The appellant-widow was specifically devised *all* of the community property and a life estate in the oil royalty and in the realty inherited by Garland L. Shadden from his mother; and the appellee-son was specifically bequeathed other items of decedent's separate property. They are the only specific legatees named in the will. In the event of any deficiency in payment of the $9,000 charge against the estate from the assets of the residuary bequest, the specific legacies are to be charged equally in meeting the balance due to appellee on his preferential charge, except that no part of the community real property may be assessed to pay any balance due. Sections 40–3–13, 45–3–902 B, N.M.S.A. 1978.

We, therefore, remand this matter to the trial court with directions to determine the identity and values of the real and personal property described in the residuary Paragraph Third of decedent's will, and to apply those values against the $9,000 note. If the properties there included do not equal the $9,000 amount, the trial court shall then determine the identity and values of decedent's interest in all of the community personal property, and the value of the specific devises to both appellee and appellant, and equally apportion against each such legacy the amount necessary to pay any balance due to appellee.

IT IS SO ORDERED.

LOPEZ, J., concurs.

SUTIN, J., concurs in result.

SUTIN, Judge (concurring in result).

I concur in the result.

Joyce Shadden appeals an adverse interlocutory order concerning the following provision in the Will of Garland L. Shadden, deceased:

To G. L. Shadden, I give and bequeath the following which is my separate property . . . a promissory note payable to me from the community in the amount of $9,000.00 which represents money I received from some of my personal property.

G. L. Shadden is the son of decedent. The trial court awarded G. L. Shadden judgment against the estate of Garland L. Shadden in the amount of $9,000.00 with interest.

I concur in the affirmance of the judgment but for none of the reasons stated in Judge Walters' Opinion. The reason for this concurrence arises out of the blood relationship of father and son based upon the intention of the father as expressed in the will. Joyce Shadden, wife of decedent, was a stepmother of G. L. Shadden.

"The intention of a testator as expressed in his will controls the legal effect of his dispositions." Section 45–2–603, N.M.S.A. 1978. In *Gregg v. Gardner*, 73 N.M. 347, 388 P.2d 68 (1963), Justice Moise introduced into this forum the principles of law that govern the interpretation of a will in order to arrive at the true intention of the testator. These rules are simple and clear but most difficult in application. They are supplemented by detailed explanation of guidelines to follow in ascertaining the meaning of words and phrases. *See, Delaney v. First National Bank in Albuquerque*, 73 N.M. 192, 386 P.2d 711 (1963); *Lamphear v. Alch*, 58 N.M. 796, 277 P.2d 299 (1954); *Brown v. Brown*, 53 N.M. 379, 208 P.2d 1081 (1949). The long essay quoted as authority in the Walters' Opinion is but an exhortatory restatement of the pertinent rules adopted in New Mexico.

A reiteration of these rules is a useless appendage when a court seeks to determine a testator's intent. A testator's intention is discerned by carefully reading the contents of the Will. When a determination is made, then each judge states those precise rules which support his conscientious belief. Clearness and ambiguity are the polestars upon which his belief is hitched and his determination made. Ofttimes, he turns to concepts of public policy, fair play and tail-twisting language to support his good faith efforts.

Casting aside the intricate rules of law, decedent gave his son a $9,000.00 promissory note made out to himself and payable from the community property of the estate. This was his intention. For Joyce Shadden to search an escape by the invention of technical crevices that may appear finds disfavor in a court of law.

To contend that the Will was not admitted to probate, nor introduced into evidence is facetious. Joyce Shadden's attorney requested findings that "The Will . . . has been admitted to probate"; that the Will made the specific bequest stated supra and that "The foregoing devise [sic] is not ambiguous." The other contentions made lack any merit.

Without knowledge of the assets and liabilities of the estate, this appeal should be affirmed, not remanded with instructions to the district court. Payment of the $9,000.00 obligation of the estate must be resolved by the district court.