307 P.2d 903

Matter of the ESTATE of John William INGRAM, Deceased,

v.

Hugh L. INGRAM, Maggie I. Coulsen, Ruby Boswell and Ruth Marshall, Appellants.

No. 8542.

Supreme Court of Utah.

March 4, 1957.

Earl D. Tanner, Salt Lake City, for appellants.

Eks Ayn Anderson, Salt Lake City, Udell R. Jensen, Nephi, for respondent.

HENRIOD, Justice.

Appeal from an order admitting two handwritten documents to probate as a last will. Affirmed with costs to respondents.

The two documents read as follows:

(1)                 "Nephi Ut May 21, 40

Dear Neice

Now doubt this letter will be a grate surprise to you are several surprises but never the less it will half to come. I wish I could talk to you but everybody is so buissy that there is no chance of you coming over. Well Nila I am on the down hill cline and dont feel right at all this spring so I have decided to fix up my property and make it air tight and this is the only way that will stand so am trusting to you to be as good to me as I am to you. And am deading it to you but reserve the right to control it till I die but iff I half to sell part of it to live on you would have to sign the deads which I hope you will be willing to do. And what ever is left I want you to divide eaquill with Earl-Bonie and Kennie and Blain and your self this way none of the others can do any thing iff I left the deads not recorded till I die then they could stop you from recording them and come in for their share and besides Alice has come back. And if she is here when I go give her enough money to take her back ore go where she pleases. I am sending the deads to you then you can send them back to the recorder, and have them recorded. Then send them back to me and I will put them in a safety box in at the bank in your and my name with other papers and things of value I wish that I could talk to you. Now dont get worried at all nothing searies at all. but just dont want to take the chances any longer the corts would get a $1000 and then it would go to the Sisters and brothers and they never done me any good. I will close now with the same love as ever. Your uncle J.W.I."

(2)                 "Nephi Utah
                         November 28—1944

Dear Nnese

In case ffo death Divide these after expenses is all paid equile.

                    (s) J. W. Ingram"

The first document was mailed to Viola Manila Brock, or "Nila," who was one of five children of one of decedent's brothers, decedent having had two brothers and three sisters. The five children were mentioned in the first document, being Earl, Bonie, Kennie, Blain and "Nila." Along with the document decedent sent an executed deed conveying to Nila certain of his realty, reserving a life estate, which deed was duly recorded and returned to him. At the same time decedent executed and delivered to Blain a deed conveying the remainder of his realty to the latter reserving a life estate, and also executed and delivered a bill of sale to certain personal property. The deed was recorded and returned to decedent.

Some four years later, while decedent was in the hospital he handed Nila a bundle of papers bound by a rubber band, included in which were the second document set out above, $1,300 in savings bonds made payable to decedent and Nila, and other papers. A bank account also was in their joint names.

■ The brothers and sisters of decedent, save the father of the five nephews and nieces mentioned in the first document, attack the documents as being nugatory, uncertain and wholly lacking in language reflecting any animus testandi, urging that plaintiff's evidence is sufficient to show planatory of a plan of distribution of property in praesenti. They emphasize their own contention that at the time such document was executed decedent disposed of *all* his property, and that an animus testandi therefore was inconsistent with his actions. We believe such a contention to be an ipse dixit, and not an established fact, since, contrary to assertions by witnesses (who could not have known) to the effect that decedent had disposed of all of his property, the document itself indicated that there was a residuum when decedent incorporated an enjoinder therein to the effect that "whatever is left I want you to divide equill," and further asserted that he would place the deeds in a safety box "with other papers and things of value." Such language, in the light of other circumstances, certainly is interpretable as evincing the fact and an intention that some property remained and should pass on the event of death.

In addition to language that reasonably would reflect an animus testandi, the document designates those intended to share in "whatever is left," and it leaves little to the imagination as to the fact that decedent definitely did not intend his brothers and sisters to become the objects of his bounty either during or after his lifetime, since he suggested that he was arranging his affairs so as to preclude the possibility that anything "would go to the Sisters and brothers * * * [who] * * * never done me any good." It would be difficult to find stronger language of an intent to disinherit.

■ There are facts in addition to the words of the documents which, if believed by the trial court,—as apparently they were,—tend to strengthen the trial court's conclusion that the documents were perhaps crude but nonetheless genuine expressions of a testamentary character. Without detailing all such facts, suffice it to point out that the record reflects that decedent harbored considerable affection for his nephews and nieces and little or none for his brothers and sisters. He had lived a block away from one sister without so much as speaking to her for 11 years. He called the nephews and nieces his chil-

dren, and they frequently brought him food, visited with him and did his laundry, which gestures were not shared nor duplicated by his brothers and sisters who, on the contrary, appear to have shunned him. We are satisfied that there is substantial evidence reflected in the record supporting the decision of the trial court as would preclude us, in a case like this, and under familiar rules of appellate review, from disturbing such decision.

▊ Counsel for appellants has called our attention to certain sections of Mr. Page's work on Wills, Lifetime Edition, which enunciate certain elementary principles relating to documents of the nature found here, and we believe that Sec. 46 thereof is particularly apropos under the facts here, and we quote with approval the following:

"Animus testandi does not necessarily mean that the word 'will' or 'testament' must be used in the transaction. A man may make his will animo testandi, though he is so ignorant of law that he thinks it is called a deed or contract; or though he does not know what to call it. The test is not what he thinks is the legal name of the instrument which he is executing, but what its legal effect is in view of its nature, and of the real intention of the maker as deduced from the instrument and from all facts and circumstances. The fact that the testamentary provisions form a very small part of the entire document, the bulk, of which is not intended to operate as a will, does not make such small part of the instrument inoperative as a will.

\* \* \* \* \* \*

"The animus testandi, then, does not turn on the presence or absence of the words 'will' or 'testament,' but on the intention of the testator as shown by the nature of the instrument and the surrounding facts and circumstances."

McDONOUGH, C. J., and CROCKETT, WADE, and WORTHEN, JJ., concur.