664 P.2d 1007

**In the Matter of the ESTATE OF Miguel MARTINEZ, Deceased.**

**Venancio MARTINEZ, Petitioner-Appellant,**

v.

**Danny MARTINEZ, Respondent-Appellee.**

**No. 5904.**

Court of Appeals of New Mexico.

April 19, 1983.

Certiorari Denied June 2, 1983.

W.R. Kegel, Michael R. Morow, Kegel, Montez & Piatt, P.C. Santa Fe, for petitioner-appellant.

Robert Suzenski, Robert Suzenski, P.C., Santa Fe, for respondent-appellee.

## OPINION

LOPEZ, Judge.

Venancio Martinez (appellant) appeals the judgment of the trial court admitting to probate the last will and testament of Miguel Martinez, deceased. We affirm.

Appellant presents two issues for our decision: 1. Whether the decedent expressed sufficient testamentary intent to create a valid will; 2. Whether the witnesses signed the document as witnesses to a will.

### FACTS

Appellant filed a petition for adjudication of intestacy on July 10, 1981. On August 3, 1981, Danny Martinez (appellee) filed a response, objection and counterpetition, submitting a document entitled "Escritura y Convenio" [Writing and Agreement] as decedent's will.

The document was drafted by Cruz Trujillo (Trujillo) pursuant to a conversation between decedent and Trujillo. Trujillo was a friend of decedent, is a notary public, but is not a lawyer. Decedent explained to Trujillo what he wanted in the document; Trujillo made notes during the conversation; Trujillo typed the document from the notes and his recollection of the conversation; Trujillo read the text of the typed document to decedent; and decedent then read the document and signed it. The events related above took place in Trujillo's office in his home over the course of about two hours. Appellee was present during the entire span of events. After decedent

signed the document, appellee and Trujillo also signed. Trujillo, however, signed in the capacity of a notary public.

A hearing was held where appellee sought to prove the validity of the document as a will, while appellant attempted to show that the document was improperly executed to be a will and that decedent could not have created a will because he lacked testamentary intent. The court found the document to be a will and admitted it to probate. Appellant appeals this result.

POINT I. WHETHER DECEDENT EXPRESSED SUFFICIENT TESTAMENTARY INTENT TO CREATE A VALID WILL.

The appellant attacks the judgment of the trial court by challenging findings 8 and 9 which read as follows:

8. That the decedent, Miguel Martinez, left a duly executed and witnessed Last Will which was executed on June 23, 1980 entitled "Escritura Y Convenio", and at the time of the execution of the Will, the decedent was a person eighteen years of age or older, was competent and of sound mind and disposing memory.

9. That the Will of the decedent dated June 23, 1980 was duly and properly executed and witnessed and is valid as the Last Will of the decedent and should be admitted to probate and otherwise probated.

Appellant argues that decedent failed to express sufficient testamentary intent to create a will. The basis for this contention is evidence indicating that the document can be read to provide appellee with an immediate interest in decedent's property and that a will must be revocable or ambulatory while this document was not. The appellant further argues that the instrument displays an intent to transfer a present irrevocable interest, and that testimony at trial indicates a lack of testamentary intent. To show a present transfer, appellant contends that the document was not in the form of a will and, therefore, normal presumptions of validity do not accompany it. Appellant claims that the sig-

natures appear in the form of a contract rather than in the form of a will. Appellant further relies on the title of the document, "writing and agreement", and the fact that traditional words as "bequeath" or "devise" do not appear, to bolster his argument that it is not a will.

In will cases, just as in other matters, we review a challenge to the trial court's findings to determine whether they are supported by substantial evidence; if they are, they will not be disturbed on appeal. *See Galvan v. Miller*, 79 N.M. 540, 445 P.2d 961 (1968). In this determination, we examine only the evidence most favorable to the challenged findings. *Galvan v. Miller, supra.* The English translation of the will presented in Defendant's Exhibit 2 was as follows:

### WRITING AND AGREEMENT

I, the undersigned, Miguel B. Martinez, being of sound and full mental capacity, but at the same time realizing that some day I must give full account to my Creator of my doings, I hereby make this and execute my final decision and stipulation:

First, I acknowledge that I have the following legitimate heirs-at-law, to-wit: Eulalia M. Pacheco, Benancio Martinez, Martin Martinez and Senon Martinez, all of whom I have helped and given them their share of inheritance to the best of my capacity and with which they should be satisfied in so far as future claims of earthly inheritance are concerned.

However, in order to comply with the laws in such cases, I hereby order that to each one of my said above-mentioned heirs, through paternal and maternal inheritance, the sum of $1.00 be awarded them after my death.

I acknowledge being the owner of certain earthly possessions, both real estate and personal property.

I state and admit that I have with me a grandson, Danny C. Martinez, who at present is looking after me and living with me during these difficult days of my life.

Therefore, at the time of my death, whenever I have ceased to exist, all said property which may be known as belonging to me, be it real estate or personal property, all of it will become the property of my said grandson, Danny C. Martinez, for his enjoyment and that he may determine of same as he sees fit.

This document will serve to place said Danny C. Martinez in full and complete, peaceful possession of said estates as above specified.

Said Danny C. Martinez, in virtue of his taking good care of me, shall be recompensed as aforementioned. He, the said Danny C. Martinez, will be the one to defray the costs of my wakes and funeral.

Provided, however, that if the said Danny C. Martinez should predecease me, then and in such instance this instrument shall be annulled and remain void and all said property will again become my own property and be placed in my name for any further disposition thereof or determination as time may require.

At the time of my death, this instrument shall serve as sufficient authority in favor of the said Danny C. Martinez to make out and execute deeds, bills of sale or any other pertinent instrument, placing him in full peaceable possession or to convey said properties without intervention or without having to go through legal proceedings or otherwise.

IN WITNESS WHEREOF, we have hereunto set our hands on this the 23rd day of June, A.D.1980.

/s/ Miguel B. Martinez
/s/ Danny C. Martinez

Subscribed and sworn to before me this 23rd day of June, 1980.

/s/ Cruz Trujillo, Notary Public
(Seal Affixed)
My com. expires: 8–8–81.

Appellee and Trujillo, the witnesses to the will, were the only. witnesses at trial. Appellant's only evidence was his English translation of the will, which was substantially the same as the English translation provided by appellee in Plaintiff's Exhibit 1. We quote herewith the pertinent testimony of both witnesses. Appellee testified as follows:

Q. What did you discuss with Cruz Trujillo at that time?
A. That my grandfather wanted some kind of a document.
Q. What was the reason for that, if you knew?
A. So that at the time of his death that I would get everything that he had, what he had.
Q. Did your grandfather tell you that?
A. Yes.
Q. When did he tell you that?
A. We had been talking about it since I remember. Before. He had been talking about it for the past two or three years.

*   *   *   *   *   *

Q. And what, tell me what the substance of that conversation was?
A. Well, the simple words, all he said was, some day whenever he would die, or whatever, I would stay with—I would stay with—with whatever he had.
Q. Is that the extent of the conversation?
A. Yes.
Q. Did he go into any detail?
A. Yes. He said one thing that at the time of his death I would pay his, his funeral expenses.
Q. Anything else?
A. Yes. In case that I would die before him that—that the property should stay again at his hands.
Q. So, in other words, you had to survive to acquire an interest in this property?
A. Yes.
Q. And that's according to his expression on the first time you remember talking to him about it back in 1979?
A. Yes.

Trujillo testified as follows:

Q. What happened when they got there?
A. The late Miguel Martinez said that he wanted to see that his property be disposed of properly if—whenever he would be called upon by the—our Creator, and that his grandson, Danny Mar-

tinez, was taking care of him and had taken care of him all of these years, and that he had already given an heir [sic-a share] of the inheritance to his other children and he was not obligated in any way to—with them in regard to inheritances, and he wanted to leave everything that he had to his grandson, Danny. And he wanted me to write an instrument to that effect.

Q. And did you do that?

A. I did that.

■ New Mexico follows the view that a will is an ambulatory document which takes effect and passes the property of a person at his death. Section 45–1–201(A)(45), N.M. S.A. 1978; *Lindley v. Lindley,* 67 N.M. 439, 356 P.2d 455 (1960); *see also* §§ 45–2–604 and 45–2–701, N.M.S.A.1978. Recently, in *Mills v. Kelly,* 660 P.2d 124 (App.1983), this Court examined a similar claim that the document offered as a will failed "to expressly set forth any language evidencing a testamentary intention by decedent." We said there:

An essential requisite of every will is that at the time of execution the instrument must have been intended by the testator to effect a disposition or provision affecting his property at the time of his death. Section 45–2–502, *supra;* § 45–1–201(A)(45), N.M.S.A. 1978. Revocability during a testator's lifetime, and an intent that the disposition take effect only after the death of the testator are essential hallmarks of a will. *See McDonald v. Polansky,* 48 N.M. 518, 153 P.2d 670 (1944).

As set out in Thompson, *Law of Wills, supra,* § 12 at 24:

"In order that an instrument be entitled to probate as a will it must be testamentary in character, and whether it is testamentary in character depends upon the intention of the maker. The animus testandi gives the instrument its testamentary character, and when this is established it is a will if the requirements as to form and execution have been complied with * * *."

■ We observe further that "it is not essential that the document expressly recite that the instrument shall take effect only at the death of the testator, if the instrument and circumstances under which it was written reasonably indicate that the document was intended to be testamentary in character."

■ If the will is ambiguous, extrinsic evidence is admissible to ascertain the testator's intentions. *Matter of Estate of Shadden,* 93 N.M. 274, 599 P.2d 1071 (Ct. App.1979). It must be remembered that the court's foremost duty is to ascertain the desire of the testator as he expressed it and to carry it to fulfillment unless prohibited by law. *Matter of Estate of Shadden, supra.* Where a doubt exists as to whether an instrument was intended to be a will, the issue of a testamentary intent is generally a question of fact for the trier of fact. *Mills v. Kelly, supra.*

■ We have reviewed the record and the pertinent testimony of witnesses and, applying the legal authorities which we have reviewed, conclude that the challenged findings of the trial court are supported by substantial evidence and they were made in accordance with law.

POINT II. WHETHER TRUJILLO AND APPELLEE SIGNED THE DOCUMENT AS WITNESSES TO A WILL.

Appellant challenges finding 9 contending that the will was not executed and witnessed as required by law. Section 45–2–502 pertains to execution of a will and provides, in part, as follows:

A. every will shall be in writing, signed by the testator or in the testator's name by some other person in the testator's presence and by his direction, and attested in the presence of the testator by two or more credible witnesses; and

B. the witnesses to a will must be present, see the testator sign the will, or one sign it for him at his request as and for his last will and testament, and *must sign as witnesses in his presence and in the presence of each other.*

Section 45–2–502 (Emphasis added). Section 45–2–502 is not derived from the Uniform Probate Code. Rather, this section is substantially unchanged from the language adopted by the legislature in 1889. *Mills v. Kelly, supra.*

We again view the evidence to determine this issue. Pertinent testimony of Trujillo is as follows:

Q. Okay. So when your—when you were attesting you were attesting as a notary public for both signatures to the agreement, the signature of Danny and the signature of Mr. Martinez?

A. I was attesting to the whole instrument, yes, signing, that they both signed the instrument as it was contained therein.

Q. Were you asked by Mr. Martinez to witness his signature?

A. In our conversation I told him that I had to have a witness to the signature, but that his signature alone was not valid.

Q. You said you told him his signature alone—

A. I told him that—I put that—those words in his mouth, that his signature alone, if it wasn't witnessed it was not valid.

Q. I believe part of what you indicated on your direct testimony was that Mr. Martinez had said that if Danny died, then maybe he—Mr. Martinez, would make another instrument similar to this one?

A. He said that he didn't have anybody else in mind, but Danny, at the time. And if Danny should die, then maybe he would put somebody else—make another instrument. That's what he intimated.

\* \* \* \* \* \*

Q. Mr. Trujillo, did Miguel Martinez appear to you to fully understand that only Danny was to get his property at his death?

A. That's the way he expressed it to me.

Q. Was there any question about that?

A. I didn't question that. And that's the way he explained it to me.

Q. And you are sure that's what he wanted?

A. That's what he wanted.

Q. That's what he told you?

A. That's what he told me when he came over to my house.

Q. Did he appear to you to understand that his other heirs would only get one dollar when he died?

A. Well, I mentioned that to him since that he had already deeded the property to them and he knew they should be satisfied with that, that we should mention that a dollar should be inserted there.

Q. And there was no question about that?

A. There was no question about that.

\* \* \* \* \* \*

Q. If you look at Defendant's Exhibit 1, the instrument that you drew, it is your testimony that this is exactly what he wanted?

A. Yes, it is.

■ Appellant contends that appellee signed the document as an agreement and not as a will, and that Trujillo signed not as a witness to the will but as a notary public. Under Point No. 1 this Court has determined that the document was a will, not an agreement, as alleged by the appellant. Therefore, the trial court properly found that appellee, was a lawful witness to the will. Section 45–2–505, N.M.S.A.1978, provides that any person generally competent to be a witness may act as a witness to a will. Section 45–2–502 requires at least two witnesses to be present, see the testator sign, and sign as witnesses in the presence of the testator and any other witness. The evidence shows that both Trujillo and appellee were present during the entire course of events. They saw decedent sign the document, and they affixed their signatures in his presence and in the presence of each other. Appellee signed in accordance with the requirements of the statute. The only

question remaining is whether Trujillo, who identified himself in the document as a notary public, can be considered to have signed as a witness. There is no issue that he was incompetent to so act. Section 45-2-505.

Other jurisdictions have considered whether persons signing in the capacity of notaries public have signed as witnesses. They have reached divergent results. One position is that signing as a notary is surplusage and does not disqualify that person from being a witness to the will. *Smith v. Neikirk,* 548 S.W.2d 156 (Ky.App.1977); *In re Ryan's Will,* 12 Misc.2d 192, 174 N.Y.S.2d 607 (1958). *See also Keely v. Moore,* 196 U.S. 38, 25 S.Ct. 169, 49 L.Ed.2d 376 (1904) (United States Vice Counsel witnessed a will but signed in his official capacity; office of witness surplusage).

The other position is that one signing as a notary intends to sign as a notary and not as a witness to the will, *Baxter v. Bank of Belle, of Belle Maries County,* 340 Mo. 952, 104 S.W.2d 265 (1937), and the will is invalid for want of due execution.

New Mexico adopted substantial portions of the Uniform Probate Code. The stated purpose of the Probate Code is as follows:

A. The Probate Code (45–1–101 to 45–7–401 NMSA 1978) shall be liberally construed and applied to promote its underlying purposes and policies.

B. The underlying purposes and policies of the Probate Code are:

\* \* \* \* \* \*

2. to discover and make effective the intent of a decedent in distribution of his property;

3. to promote a speedy and efficient system for the settlement of the estate of the decedent; and

\* \* \* \* \* \*

Section 45–1–102, N.M.S.A.1978. Moreover, the general comment to the wills section of the Probate Code provides as follows:

Part 5 of Article II deals with capacity and formalities for execution and revocation of wills. If the will is to be restored to its role as the major instrument for disposition of wealth at death, its execution must be kept simple. The basic intent of these sections is to validate the will whenever possible. To this end, the age for making wills is lowered to eighteen, formalities for a written and attested will are kept to a minimum \* \* \*.

Uniform Probate Code, 8 Unif.L.Annot. 348 (1972).

The purpose of a witness to a will is to ensure proof is available to show that there has been compliance with the requisites of execution and that the instrument offered for probate is the paper which the decedent signed. *Oliver v. Union National Bank of Springfield,* 504 S.W.2d 647 (Mo. App.1974); *Palmer v. Ketner,* 29 N.C.App. 187, 223 S.E.2d 913 (1976). A notary public is defined as "One who is authorized by the state or federal government to administer oaths, and to attest to the authenticity of signatures." Black's Law Dictionary 956 (5th ed.1979).

Based on authorities that we have reviewed, and taking the evidence in the light most favorable to the judgment of the trial court, we conclude that Trujillo signed as a witness to the will. We hold that finding 9 is supported by substantial evidence and that it is supported by law.

The judgment and order of the trial court is affirmed. The appellate costs shall be paid by the appellant.

IT IS SO ORDERED.

WALTERS, C.J., and HENDLEY, J., concur.