**In the Matter of the ESTATE OF Mary Miles KLEINMAN, Deceased.**

**Humane Society of Utah, Claimant and Appellant.**

**Carol Vincent, Personal Representative and Appellee.**

No. 960495.

Supreme Court of Utah.

Dec. 29, 1998.

---

Craig S. Cook, Salt Lake City, for claimant.

D. William Ronnow, John J. Walton, St. George, for personal representative.

HOWE, Chief Justice:

The Humane Society of Utah appeals from a district court judgment construing two handwritten documents prepared by Mary Miles Kleinman, now deceased. The court held that these documents, which purported to bequeath money to the Humane Society of Utah and the testator's church, merely constituted memoranda disposing of tangible personal property as permitted by a provision of her 1986 will, pursuant to Utah Code Ann. § 75–2–513, and that they did not constitute separate holographic wills authorized by section 75–2–503. The court concluded that the bequests of money made in those writings were void because bequests of money in a memorandum are impermissible under section 75–2–513.

## FACTS

Mary Miles Kleinman died on February 5, 1993, leaving a will dated March 5, 1986, which was admitted to probate. In the will, she expressly revoked all previous wills and codicils. In article V of her will, she gave "my personal property in accordance with a memorandum signed by me or in my handwriting which I intend to leave at my death."

Carol Vincent, the personal representative of Mrs. Kleinman's estate, filed a petition for an "Order Construing Will," seeking a ruling on the legal effect of two documents written by Mrs. Kleinman, labeled "1984 and Up" and "Tangible Personal Property," which did not bear a date. In the "1984 and Up" writing, Mrs. Kleinman left a long list of instructions regarding the care of her cat Troy, who was clearly very important to her. Included in that writing was a statement that Mrs. Kleinman wanted "$30,000 in trust for Troy.... If he should get lost or dies the fund balance is to go to a Humane Society. If none here give to Salt Lake City Society." The "Tangible Personal Property" writing was much more detailed. In that writing, Mrs. Kleinman left instructions as to the disposition of her personal property, leaving her jewelry, photographs, books, and various other household possessions to nieces and nephews. Then, before giving another set of extremely detailed instructions regarding the care of Troy, she stated: "Miles [Mrs. Kleinman's deceased son] and I love animals. We wanted to donate the sum of $75,000 to the Humane Society of Utah." Vincent petitioned the court to find that the two writings constituted memoranda for the purpose of disposing of personal property pursuant to section 75–2–513 and, based on that finding, to invalidate the cash bequests found in the writings on the ground that cash bequests cannot be made in a memorandum but only in a will or codicil.

The Humane Society of Utah filed an objection to the petition for "Order Construing Will," asserting that the two documents were valid holographic wills, and seeking validation of the bequests of money made in those documents. At an evidentiary hearing, the Humane Society conceded that the "1984 and Up" writing was not a valid holographic will because it did not contain Mrs. Kleinman's signature, but contended that the undated "Tangible Personal Property" writing constituted a holographic will.

The court entered its findings of fact and conclusions of law and an "Order Construing Will." The court found that the two handwritten documents were not executed with the necessary testamentary intent to constitute holographic wills, but were signed with the intent only to make a memorandum disposing of tangible personal property pursuant to article V of Mrs. Kleinman's 1986 will. Therefore, the court declared void the cash bequests to the Humane Society, as well as an additional cash bequest to the St. George

Fifth Ward of the Church of Jesus Christ of Latter-day Saints.

## ANALYSIS

Section 75-2-513, governing memoranda disposing of personal property, provides:

Whether or not the provisions relating to holographic wills apply, a will may refer to a written statement or list to dispose of items of tangible personal property not otherwise specifically disposed of by the will, *other than money* .... To be admissible under this section as evidence of the intended disposition, *the writing must either be in the handwriting of the testator or be signed by him* and must describe the items and the devisees with reasonable certainty. The writing may be referred to as one to be in existence at the time of the testator's death; it may be prepared before or after the execution of the will; it may be altered by the testator after its preparation; and it may be a writing which has no significance apart from its effect upon the dispositions made by the will. If there are several writings in existence which contain conflicting provisions, the writing which is established by a date or other circumstances to be the most recent shall control. If it is impossible to determine which writing is the most recent, the consistent provisions of the several writings shall be considered valid, and the conflicting provisions shall be considered invalid.

(Emphasis added.)

Section 75-2-503, which governs holographic wills, provides:

A will which does not comply with Section 75-2-502 is valid as a holographic will, whether or not witnessed, *if the signature and the material provisions are in the handwriting of the testator.* If there are several holographic wills in existence with conflicting provisions, the holographic will which is established by date or other circumstances to be the will that was last executed shall control. If it is impossible

to determine which will was last executed, the consistent provisions of the several wills shall be considered valid and the inconsistent provisions shall be considered invalid.

(Emphasis added.)

 A memorandum, which may be employed to dispose of items of tangible personal property other than money, must either be in the testator's handwriting *or* bear her signature. In contrast, a holographic will can be used to dispose of any property, including money, but its material provisions must be in the handwriting of the testator *and* signed by her. Inasmuch as the Humane Society conceded at trial that the "1984 and Up" writing was not a valid holographic will because it did not contain Mrs. Kleinman's signature, we need only consider what legal effect should be given to the "Tangible Personal Property" writing.

 After Mrs. Kleinman made her 1986 will, she was free to revoke it, to make a memorandum disposing of her tangible personal property not otherwise specifically disposed of in her will (excluding money), or to amend it by making a codicil. The writing that she labeled "Tangible Personal Property" was made with all of the formalities required of a holographic will because it is in her handwriting and bears her signature. However, it is not dated. If it was made prior to her 1986 will, it was revoked by that will. If, on the other hand, it was made subsequent to her 1986 will, it operates as a holographic codicil to that will. In it, she made bequests of money to her church and to the Humane Society that she could not make under the statutory limitations of a memorandum. Since she was free to make a holographic will, this court must give full legal effect to her expressed intention.

The legislature decreed in section 75-1-102(1) that the Utah Uniform Probate Code is to be "liberally construed and applied to promote its underlying purposes and policies." Two of those "purposes and policies" are set out in subsections (2)(a) and (b).

They are (a) "to simplify and clarify the law concerning the affairs of decedents," and (b) "to discover and make effective the intent of a decedent in distribution of his property." The trial court refused to recognize the "Tangible Personal Property" writing as a holographic will because it found that the testator thought that she was simply writing a memorandum in pursuance of article V of her 1986 will. We disagree. We cannot refuse to give full legal effect to an otherwise valid writing for that reason.

The best evidence of Mrs. Kleinman's intent are the words she employed in her writing. Here, in a holographic will, she left both personal property to her family members and cash bequests to her church and to the Humane Society. That is all the law requires. In *In re Ingram's Estate,* 6 Utah 2d 149, 307 P.2d 903 (1957), we held that an ungrammatical letter, which an uncle wrote to his niece, constituted a holographic will since it contained all the necessary elements of testamentary intent, even though it was clearly in the form of a letter and not a legal document. There, we quoted with approval from *Paige on Wills,* § 46 (Lifetime ed.) as follows:

> "Animus testandi does not necessarily mean that the word 'will' or 'testament' must be used in the transaction. A man may make his will animo testandi, though he is so ignorant of law that he thinks it is called a deed or contract; or though he does not know what to call it. The test is not what he thinks is the legal name of the instrument which he is executing, but what its legal effect is in view of its nature, and of the real intention of the maker as deduced from the instrument and from all facts and circumstances."

6 Utah 2d at 153, 307 P.2d at 906.

It is immaterial what label the testator places on her writing or what she thinks the proper label should be. Mrs. Kleinman was not a lawyer and probably did not have the Utah Probate Code before her when she wrote the "Tangible Personal Property" writing. What is important is that she demonstrated testamentary intent by disposing of certain property at the time of her death in a writing that meets all of the formalities required of a holographic will. Courts acting under the Probate Code must give full legal effect to such a writing; in this case, to regard the writing as a holographic will that serves as a codicil to her 1986 will if it was written subsequent thereto.

■ We therefore conclude that the case must be remanded to the trial court to determine whether the writing "Tangible Personal Property" was made subsequent to her 1986 will, thus constituting a codicil thereto. In that event, the codicil should be admitted to probate and the bequests of money made therein should be validated.

Associate Chief Justice DURHAM, Justice STEWART, and Justice RUSSON concur in Chief Justice HOWE's opinion.

ZIMMERMAN, Justice, dissenting:

I respectfully dissent from the majority opinion. I would affirm the lower court decision that the handwritten documents prepared by Mary Miles Kleinman ("Mrs. Kleinman") constituted only memoranda disposing of tangible personal property in furtherance of a provision of her 1986 will, as provided for by section 75–2–513 of the Code, and not separate holographic wills, permitted under section 75–2–503 of the Code. Furthermore, I would affirm the lower court's conclusion that the gifts of money those memoranda purported to make were void because section 75–2–513 does not permit the disposition of money in such a writing. The majority opinion, while nobly upholding the gifts of money to the worthy charities named in the handwritten document in question, will spawn a great deal of confusion for testators because they will have no basis for knowing whether a memorandum pursuant to section 75–2–513 might be construed as a holographic will if they exceed the minimum requirements of section 75–2–513. Furthermore, the majority opinion effectively eviscerates section 75–2–513's prohibition against the disposition of

certain types of property by a memorandum supplemental to a will. I fear the majority is led by its heart and not by its head.

The issues raised in this case are two: first, whether the writings showed sufficient testamentary intent to constitute valid holographic wills; and second (a question which the majority does not reach), whether the trial court incorrectly restricted the admission of extrinsic evidence offered by the Humane Society as to the testamentary intent of Mrs. Kleinman.

Before turning to my analysis, I highlight certain parts of the pertinent statutes, and briefly discuss the relationship between them. Section 75–2–503, which governs holographic wills, provides:

> A will ... is valid as a holographic will ... if the signature *and* the material provisions are in the handwriting of the testator.

Utah Code Ann. § 75–2–503 (1993) (emphasis added).

Section 75–2–513, governing writings disposing of personal property, states:

> [A] will may refer to a written statement or list to dispose of items of tangible personal property not otherwise specifically disposed of by the will, *other than money, evidences of indebtedness, documents of title, and securities, and property used in trade or business.* To be admissible under this section as evidence of the intended disposition, *the writing must either be in the handwriting of the testator or be signed by him* and must describe the items and the devisees with reasonable certainty.

Utah Code Ann. § 75–2–513 (1993) (emphasis added).

An examination of the language of the two statutory sections reveals the source of the controversy in this case. Gifts of money are not permitted pursuant to section 75–2–513. Thus, the only way the purported gift to the Humane Society contained in the "Tangible Personal Property" writing can be valid is if that writing is deemed to be a holographic will.[1] In order to be a valid holographic will, *both* the material provisions of the will and the signature must be in the handwriting of the testator.[2] However, a section 75–2–513 writing need only satisfy one of these requirements. That is, such a writing can *either* be signed by the testator *or* be in his or her handwriting. Nevertheless, it follows logically that a section 75–2–513 writing must also be valid if *both* of these requirements are satisfied, for it would be absurd to conclude, as the majority has, that a memorandum written pursuant to section 75–2–513 is invalid simply because the testator exceeded the minimal statutory requirements and both hand-wrote and signed the document. It is this possibility that one document can simultaneously satisfy the minimum statutory requirements of both section 75–2–503 and section 75–2–513 that creates the problem in this case which the majority does not fully address.

The general legal notion of "testamentary intent," which is an essential ingredient of a valid will, whether holographic or formally executed, is not sufficient to distinguish a holographic will from a section 75–2–513 writing. To say a document contains testamentary intent means that it was written with the intent to create a revocable disposition of property effective upon the testator's death. *See* 94 C.J.S. *Testamentary Intent* § 129 (1956); *In re Estate of MacLeod,* 206 Cal.App.3d 1235, 254 Cal.Rptr. 156, 158 (4th App. Dist.1988); *In re Estate of Martinez,* 99 N.M. 809, 664 P.2d 1007, 1008 (N.M.Ct.App. 1983). And while a holographic will must

---

**1.** As the majority notes, the Humane Society conceded that the "1984 and Up" writing was not a valid holographic will, and, therefore, I too limit my discussion to the issues surrounding the "Tangible Personal Property" writing.

**2.** I note that in order for a handwritten, signed document to qualify as a holographic will, the signature must have been made "with the intent to authenticate" the will. *See In re Estate of Erickson,* 806 P.2d 1186, 1188 (Utah 1991) (citing Utah Code Ann. § 68–3–12(2)(r) (Supp. 1990)). Signatory intent can be shown by extrinsic evidence such as documentary evidence or witness testimony, or intrinsic evidence, such as the completeness of the document. *See id.* at 1189.

always express testamentary intent to be valid, a memorandum executed pursuant to section 75–2–513 may also express such general testamentary intent. Thus, a document that was intended by the testator to function as a section 75–2–513 memorandum, could, standing alone, meet all the requirements of a valid holographic will. This is where the majority's analysis stops; it finds that because the document in question meets the requirements of a valid holographic will, we need look no further.

However, the majority creates innumerable problems by concluding that a document which was intended by the testator to function as a 75–2–513 memorandum is in fact a holographic will simply because the testator exceeded the minimal statutory requirements of a 75–2–513 writing and because the writing contains evidence of testamentary intent. Such a ruling means that almost any signed, handwritten document intended to function as a 75–2–513 memorandum would also qualify as a holographic will. The consequence is to eviscerate section 75–2–513 and its prohibitions against disposition of certain types of property by memorandum supplemental to a will. Such a ruling also creates uncertainty for any testator because they will be unsure whether a section 75–2–513 writing might, after their death, be held to be a holographic will that would inadvertently upset their intended will.

Therefore, where a document satisfies the requirements of both sections 75–2–503 and 75–2–513, and contains testamentary intent, I would require that a more specific determination of the testator's intent be made. The majority is mistaken in relying solely on the fact that Mrs. Kleinman's "Tangible Personal Property" writing meets the requirements for a valid holographic will and in refusing to look to her specific intent. The intent which should control is not general testamentary intent, but the specific intent of the testator in drafting a document to have it function as either a will or a memorandum. This is a determination which should be made by the trier of fact, upon consideration of any relevant evidence, whether intrinsic or extrinsic.

Because this inquiry requires a determination of the subjective state of mind of the testator, it is a factual determination, which once made, should not be set aside unless shown to be clearly erroneous. *See State v. Pena,* 869 P.2d 932, 935 (Utah 1994) (stating "[f]actual questions are generally regarded as entailing the empirical ... as well as the subjective, such as state of mind"). The majority takes this determination upon itself and out of the hands of the fact finder when it finds that Mrs. Kleinman's intent is best evidenced by the fact that "she left both personal property to her family members and cash bequests to her church and the Humane Society." I disagree. Her possible mistake in believing that she could include cash bequests in a section 75–2–513 memorandum does not indicate that she intended the document to be a holographic will. The question is about Mrs. Kleinman's specific testamentary intent, a fact question, and one the determination of which should not be overturned unless the trial court's finding was clearly erroneous.

Having set forth the general principles governing the application of these statutes, I now move on to the specific facts of this case. The Humane Society's first argument is that the trial court erred in concluding that the "Tangible Personal Property" writing did not contain sufficient testamentary intent to constitute a valid holographic will. It argues that the trial court has essentially ruled as a matter of law that a handwritten document which satisfies the requirements of a section 75–2–513 memorandum cannot also be a valid holographic will pursuant to section 75–2–503. The Humane Society also argues that this construction of the statutes is a question of law which we should review for correctness. *See Pena,* 869 P.2d at 937.

I would reject the Humane Society's characterization of the trial court's ruling. The trial court never concluded as a matter of law that a document could not satisfy both sections 75–2–503 and 75–2–513. It also did not rule, as the Humane Society contends, "that this document could under no circumstances be considered a holographic instrument."

The trial court stated in its findings of fact that the writings lacked "sufficient indication of testamentary intent" to constitute holographic wills. It also found that they were executed with the intent to comply with article V of Mrs. Kleinman's 1986 will. Although the trial court's factual findings could perhaps have been stated more artfully, it clearly did not hold that a writing such as the one at issue could never constitute a valid holographic will, but rather, that in this particular case Mrs. Kleinman's intent was to have the writing function as a section 75–2–513 memorandum. Where a writing otherwise satisfies both sections 75–2–503 and 75–2–513, such a determination of the testator's *specific* intent is precisely what the law requires. The trial court made a factual determination; its ruling does not implicate the construction of the statutes and, therefore, its decision should not be reviewed for correctness but rather should be overturned only if clearly erroneous.

As for the question of whether the trial court erred in concluding that the "Tangible Personal Property" writing lacked sufficient indication of testamentary intent to constitute a valid holographic will, my earlier discussion makes it clear that in my view, the specific intent of the testator to have a document function as a will or a personal property memorandum is a question of fact. It is well established that

> [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. . . . To successfully attack a trial court's findings of fact, an appellant must first marshal all the evidence in support of the findings and then demonstrate that the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the findings against an attack.

*Grayson Roper Ltd. v. Finlinson*, 782 P.2d 467, 470 (Utah 1989); *see also* Utah R. Civ. P. 52(a) (findings of fact shall not be set aside unless clearly erroneous). Vincent's counsel argues that because the Humane Society is attacking the trial court's factual findings, and has failed to marshal the evidence, the

court's findings should be affirmed on that basis alone. The Humane Society, however, cites *In re Estate of Erickson*, 806 P.2d 1186 (Utah 1991), for the proposition that because the evidence relied upon by the trial court in concluding there was insufficient testamentary intent for the documents to constitute holographic wills was undisputed, "all issues are questions of law which we review for correctness." 806 P.2d at 1189.

Upon review, it is clear that our case law concerning findings of testamentary intent has left the standards of review to be applied in such cases somewhat muddied. For example, our most recent case, *In re Estate of Erickson*, was decided in 1991. In that case, we said that when evidence as to the decedent's signatory intent is undisputed, all issues are questions of law, but that when the trial court hears disputed evidence as to that intent, we should defer to its factual findings unless clearly erroneous. *Id.* at 1189. Prior to *Erickson*, however, we decided *In re Estate of Bartell*, 776 P.2d 885 (Utah 1989). In that case, the issue before the trial court was whether the decedent had provided for his wife by transfers outside his will and had intended such provision to be in lieu of her taking under the will. *Id.* at 885. Our decision focused on the requirement that when attacking the trial court's factual findings, an appellant must marshal the evidence. *Id.* at 886. Because the appellant had failed to marshal the evidence in favor of the trial court's ruling as to the decedent's intent, we gave the appeal only brief consideration. While we emphasized that "we do not sit to retry cases submitted on disputed facts," it seems clear that we did not mean to imply that whether the evidence is disputed or not is the determining factor in deciding the standard of review. *Id.* Unfortunately, the majority again fails to address the proper standard of review and to deal with the apparent conflict between *Erickson* and *Bartell.* The majority does not indicate whether a finding of testamentary intent is a finding of fact or one of law. The implication could readily be drawn from the majority opinion that it is a question of law because once the minimum legal requirements for a holograph-

ic will are met, the majority maintains that we need look no further. This decision will only serve to further muddy the standard of review waters.

I would take this opportunity to clarify our standards of review in cases dealing with issues of testamentary intent. First, as indicated above, the issue of testamentary intent should be considered a question of fact. This is true whether the intent we are dealing with is general testamentary intent, i.e., the intent to create a revocable disposition of property to take effect upon death, or the specific intent of the testator to have a document function as a will or memorandum. Based on my analysis of this as a question of fact, under rule 52(a) and our case law, these factual findings should not be set aside by a reviewing court unless they are clearly erroneous.

Nonetheless, some have argued, and indeed *Erickson* seems to support the proposition, that where a trial court relies solely on documentary evidence and draws inferences only from undisputed facts, appellate review gives no deference to the trial court. This view is mistaken. As the United States Supreme Court said in *Anderson v. City of Bessemer, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985):

> The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and along with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determinations at a huge cost in diversion of judicial resources.

*Id.* at 574, 105 S.Ct. 1504. Thus, even where evidence is undisputed, we should not substitute our judgment for that of the trial court in determining the testator's intent.

In the instant case, the Humane Society has not made the slightest attempt to fulfill its obligation to marshal the evidence in favor of the trial court's ruling. Instead, it has reargued the facts, construing all the evidence in the light most favorable to its case, and largely ignoring the evidence supportive of the trial court's findings. This failure to marshal alone could warrant affirmance of the finding of intent because we rely heavily on the presumption of correctness that these findings are accorded under rule 52(a). But, as will be evident from the subsequent discussion of harmless error, considering all the evidence does not persuade me that the trial court's findings regarding the decedent's intent were clearly erroneous.

I now turn to the Humane Society's second claim of error, that the trial court incorrectly refused to admit additional extrinsic evidence of Mrs. Kleinman's testamentary intent. The majority does not reach this issue because it finds that the "Tangible Personal Property" writing was a holographic will. Since I would not so find, I will address the Humane Society's second claim of error.

Again, I first discuss the standard of review. As we stated in *Cal Wadsworth Construction v. City of St. George,* "[t]he issue of 'whether evidence is admissible is a question of law, which we review for correctness, incorporating a 'clearly erroneous' standard of review for subsidiary factual findings.'" 898 P.2d 1372, 1378 (Utah 1995) (quoting *State v. Diaz,* 859 P.2d 19, 23 (Utah Ct.App.1993), *cert. denied,* 878 P.2d 1154 (1994)). Nonetheless, as we recognized in *State v. Pena,* while the decision whether to admit evidence is a question of law, "rulings on the admission of evidence ... generally entail a good deal of discretion." 869 P.2d 932, 938 (Utah 1994). Furthermore, "an erroneous decision to admit or exclude evidence does not constitute reversible error unless the error is harmful.... An error is harmful if it is reasonably likely that the error affected the outcome of the proceedings." *Id.* (internal citations omitted).

Even if the trial court erroneously excluded the extrinsic evidence proffered by the Humane Society regarding Mrs. Kleinman's

prior wills, I would conclude that that exclusion was harmless. The significance of Mrs. Kleinman's prior wills, as far as they relate to her specific intent in preparing the "Tangible Personal Property" writing, appears slight. That is, there was significant evidence intrinsic to that document that it was written pursuant to article V of her will.

First, within the "Tangible Personal Property" writing, Mrs. Kleinman on several occasions refers to "her will." This is very strong evidence that she did not understand or intend that writing itself to be a will. Second, article V of the 1986 will specifically stated that Mrs. Kleinman would be leaving a handwritten memorandum disposing of her personal property. The fact that the writing was entitled "Tangible Personal Property," combined with the fact that it referred to her will, is strong evidence that it was written pursuant to article V of the will.

On the other hand, there is nothing in the excluded evidence which makes it any more likely that Mrs. Kleinman intended the writings at issue to be holographic wills. While it may be true that Mrs. Kleinman wanted to leave money to the Humane Society, and while evidence of the prior wills may be relevant to the argument that Mrs. Kleinman's true testamentary wishes were defeated through fraud or undue influence when she executed the 1986 will, this is not the issue before us. No such claims directed to the 1986 will were presented to the trial court for its decision, and none are presented to us. On the question of the intent with which the document before us was executed, nothing in the prior wills is sufficient to lead me to conclude that the trial court committed harmful error when it refused to consider them on the question before it. I would, therefore, hold that no harmful error occurred when the evidence was excluded.

For the reasons stated above, I would uphold the trial court's ruling.